## TRICE *v.* THE STATE.

1. The accused having, whilst armed with a pistol concealed on his person, challenged the deceased to fight in the public road, and having slain him with the pistol because the deceased, in answer to said challenge, was advancing upon him with an open knife, and the shooting having been done before the deceased had approached near enough to put the accused in immediate danger, and the latter having done nothing to decline the combat before giving the mortal wound, the killing was not necessary to save his own life. The requests to charge the jury on the subject of reasonable fear and self-defence were not applicable to the actual facts of the case, and were not sufficiently comprehensive to embrace all the qualifications and additions which those facts rendered necessary. The charge of the court as given was correct in substance, and the evidence well warranted a verdict for voluntary manslaughter. The law of involuntary manslaughter was not involved in the case.
2. Even if uncommunicated threats by the deceased against the life of the accused were admissible in evidence, their exclusion, under the facts of the case, would be immaterial error. In no view of the evidence, with such threats included, would the homicide have been of a lower grade than voluntary manslaughter. The accused had the benefit of much stronger threats than those excluded, numerous communicated threats having been received in evidence.

August 1, 1892.                                    *Judgment affirmed.*

Criminal law. Charge of court. Manslaughter. Evidence. Threats. Before Judge BOYNTON. Pike superior court. April term, 1892.

Charles T. Trice was indicted for the murder of his brother, Zack T. Trice, and was found guilty of voluntary manslaughter. The evidence is voluminous and somewhat conflicting, but the record shows testimony for the State to the effect, that Zack Trice and a witness were driving in a buggy by land which had been the subject of litigation and ill feeling between the two

brothers for years; that the defendant came from the roadside behind the buggy and told the occupants thereof to hold on; they stopped, and the defendant said to Zack that he wanted to know what he meant, that he had been bothering his business for nine years and if he did not stop it he (defendant) would stop it, and if he caught Zack ten feet over there he would whip him. Zack replied that defendant had the papers to show what he meant, to which the defendant answered that he had got a paper but did not care for that, and if he caught Zack over there he would whip him. The witness told Zack to drive on; he started, and as they moved on, the defendant followed and said, "Hold on, and if I can get you out of that buggy I will whip you," to which Zack replied that it would take four of him to do that (or some similar statement), threw the reins into the hands of the witness and jumped from the buggy, taking out his pocket-knife. The defendant drew his pistol saying, "See there, see there," and backed three or four steps. Zack dodged against one of the rear wheels of the buggy (the two men being ten or fifteen feet apart) and was shot by the defendant, who went up and down a few steps and exclaimed, "Have I killed my dear brother? Oh, Mr. Nasworthy, have I killed my dear brother; is it possible that I have killed my dear brother?" The circumstances of the homicide as detailed by defendant's witnesses differed from the above, and tended to show that Zack was advancing on the defendant with the knife uplifted when the pistol was fired, and that they were only about five feet apart; and there was considerable testimony tending to show threats by the deceased against the defendant, which were communicated to him, and some testimony that Zack had a reputation for quarreling and fighting.

The motion for a new trial alleges that the verdict is

contrary to law and evidence. Other grounds assign error upon the refusal of the court to give the following charges as requested :

"It makes no difference how much ill will or malice Charles Trice bore for Zack Trice; if Charles Trice killed Zack Trice under an honest belief that Zack Trice was about to take his life, and under such circumstances as would lead a reasonable man to believe that in order to save his own life it was necessary to take the life of Zack Trice, then he would be justifiable.

"If, upon words of reproach by defendant to deceased, the two engaged in a fight, and no undue advantage was taken by either one, and in the progress of the fight the defendant killed the deceased, then you would be authorized to find the defendant guilty of manslaughter. But, although you may believe that the defendant used words of reproach to deceased, yet if deceased was the first to draw a weapon, and if he drew a weapon likely to produce death, and if he advanced upon defendant with intent to assault defendant with such weapon, before defendant presented a weapon, and if defendant drew his pistol and shot deceased under such circumstances as would lead a reasonable man to believe that in order to save his own life, or to prevent a felony from being committed on his person, it was necessary to take the life of deceased, then you would be authorized to find defendant not guilty.

"Although you may believe from the evidence that defendant said to deceased, 'If you will get out of your buggy I will whip you,' and if deceased got out of his buggy and advanced on defendant with a weapon likely to produce death, and if deceased had killed defendant without defendant having done more than invite deceased from his buggy to fight, the deceased would have been guilty of murder; and if this be so, and if defendant shot deceased to prevent being killed,

or to prevent deceased from committing a felony upon his person in such an attack by deceased upon him, then you would be authorized to find defendant not guilty.

"If you believe from the evidence that defendant halted the deceased to talk with him, and if you believe that during the conversation defendant said to deceased that if he (defendant) caught deceased on his land he would have him (defendant) to whip, or that he (defendant) would whip deceased, such provocation would not justify deceased in using or attempting to use upon defendant a weapon likely to produce death; and if, under such circumstances, the deceased did attempt to use on defendant a weapon likely to produce death, if defendant killed deceased in the honest belief that deceased would take his life or commit a serious personal injury upon his person, and under such circumstances as would lead a reasonable man to believe that in order to save his own life, or to prevent a felony from being committed on his person, it was absolutely necessary to take the life of deceased, then you would be authorized to find defendant not guilty.

"In determining the question of whether the defendant acted under the fears of a reasonable man, you may take into consideration any evidence submitted to you in regard to the character of the deceased for turbulence and violence, and any proof of threats made by deceased against defendant, and all other facts and circumstances surrounding the transaction."

Another ground complains that the court ruled out the testimony of Frank Malier, as follows: "I live in 8th district of Pike. I knew Zack Trice. I had a consultation with him the day he was killed, down at the Baptist church. He said he was mad. I asked him who he was mad with; he said 'I am mad with Charley.' I asked him, what about; he said, about the land. I told him I thought that was all settled; and he said,

'No, it is not settled, and by God it will not be settled until death settles it.' I told him that was wrong, he ought not to talk that way; he said, 'You wait and see, and it will not be long.' This was after twelve o'clock; after the service was closed on the same day he was killed." This witness was offered after several witnesses on behalf of the defendant had testified about threats deceased had made against defendant, and which had been communicated to defendant before the crime was committed, and the testimony above recited was all heard by the jury. The first question asked on cross-examination was, " Were these remarks ever reported to Charley before the killing?" And the witness answered, " No, sir, I did not see Charley; that was the day he was killed." The solicitor-general moved to rule out this testimony, and the court said, " Motion sustained for the present, to await authorities before final decision." Nothing more was said or done about excluding the evidence, and no instruction was given to the jury with reference to the same.

Another ground complains that the court rejected the following testimony of Mollie Jenkins: " The day before the homicide was committed, witness was at the house of Willis Brown, which house is very near the public road from Barnesville to Zebulon, and just across the public road from the old Trice place, and just in front of which house the homicide was committed. The day before the homicide was committed, Charles Trice was standing in front of Williamson's house talking to the wife of Willis Brown. He, Charles Trice, had a gun with him. Charles Trice looked down the road towards Potato creek and saw Zack Trice coming along the road in a buggy, when he, Charles Trice, went around behind Willis Brown's house and concealed himself until after Zack Trice had passed. As Charles Trice went behind the house he told Willis Brown's

wife that if Zack should inquire for him, to say to Zack Trice that the defendant had been there but had gone off."

Other grounds assign error in the following instructions given by the court:

"If the killing was deliberately done with malice aforethought, then you would be authorized to return a verdict of guilty.

"If you find from the evidence that Zack Trice drew his knife and manifested a purpose to assault, or to inflict upon Charles Trice a serious personal injury, and yet you further believe that after Zack Trice saw that Charley Trice was armed and ready to defend himself, and he in good faith abandoned any purpose to assault him or to do him any injury, and if Charles Trice shot him and killed him at a time when he was making no effort to do Charles Trice a personal injury, then you would be authorized to find that the killing, if done, was done with a deliberate intention with malice aforethought, and to bring in a verdict of guilty.

"If, as I have already charged you, you believe from the evidence that Charles Trice provoked or instigated or induced Zack Trice to alight from his buggy to make an effort to do him an injury, and it was done in consequence of provocation offered by Charles Trice, then the act or conduct of Zack Trice would not justify defendant taking his life with deliberate purpose to kill.

"But if the killing was done under that sudden impulse of passion supposed to be irresistible, done without any mixture of any deliberation or malice either expressed or implied, then you would be authorized to find the defendant guilty of voluntary manslaughter.

"If you believe from the evidence that there was ill feeling between these parties, C. T. Trice and Z. T. Trice, and if you believe that they met and that there was a

sudden quarrel grew up between them, and that they drew their weapons and fought, and one killed the other, then such killing would be voluntary manslaughter and not murder.

"If you believe from the evidence that there was an agreement between these parties, Charles Trice and Zack Trice, to fight—a mutual agreement to fight, or if you believe that there was a mutual intent to fight between them, and upon a sudden quarrel that both of them drew their weapons for the purpose of engaging in a mutual combat, and if you believe that C. T. Trice, under the circumstances, killed Z. T. Trice, then the offence would be neither murder nor justifiable homicide, but voluntary manslaughter.

"If they had ill feeling toward each other, if they met, and there was a sudden cause of quarrel between them, and they engaged in a mutual combat or mutual fight, and both drew their weapons for the purpose of engaging in the fight at the time, although Zack Trice may have been advancing on Charles Trice with a weapon at the time, it would not be justifiable homicide, nor would it be murder, but voluntary manslaughter."

There is also a ground alleging error in failing to charge the law of involuntary manslaughter.

HALL & HAMMOND, STEWART & DANIEL and J. F. RED-DING, for plaintiff in error.

J. H. TURNER, solicitor-general, by HARRISON & PEEPLES, J. S. POPE and J. J. ROGERS, *contra*.