## DELEGAL *v.* THE STATE.

1. A private person is authorized to make an arrest for a misdemeanor only where the offense is committed in his presence or within his immediate knowledge.    It was, therefore, error on the trial of a person charged with the homicide of one who had attempted to arrest him, where the evidence clearly showed that the deceased and another attempted to arrest the accused for a misdemeanor two days after the commission of the offense. and that the deceased and his companion were private persons acting without a warrant, to give in charge to the jury the law authorizing officers to make arrests without warrants ; and it was especially erroneous to instruct the jury in effect that a private person might arrest where "it was reasonably proper to do so in order to prevent a failure of justice for the want of an officer to issue a warrant."    For the same reason it was error to charge:    "Whether under all the circumstances, including the facilities for obtaining a warrant, according to the spirit of the law, there was or was not cause for attempting the arrest, is a question, after all, for you to determine."

2. It was error in such a trial to allow a witness to give his opinion as to what would have been the result to him and the sheriff if they had persisted, two days before the homicide, in an effort to remove a prisoner from the jail to the railway-station against the will of a mob of which the accused was alleged to have been a member.

3. Where there was no evidence of any mutual combat between the deceased and the accused preceding the homicide, it was error to give in charge to the jury the provisions of section 73 of the Penal Code.

4. Though in the statement of one on trial for murder he may have used an expression which, at most, was merely susceptible of the construction that

he had consented for the deceased and another, who at the time of the homicide were threatening without lawful authority to take him into custody, to enter his house for that purpose, yet where it affirmatively and positively appeared from the evidence that neither the deceased nor the other entered the house in consequence of any such alleged consent, it was error to submit to the jury any question as to whether or not their entering the house was upon the invitation, tacit or otherwise, of the accused.

Argued January 15, — Decided January 25, 1900.

Indictment for murder. Before Judge Seabrook. Effingham superior court. September term, 1899.

*Robert J. Travis, Twiggs & Oliver,* and *John L. Travis,* for plaintiff in error. *J. M. Terrell, attorney-general,* and *Livingston Kenan, solicitor-general,* contra.

SIMMONS, C. J. The record discloses that on August 23, 1899, there was an alleged riot in the town of Darien, Georgia. On the next day the mayor of Darien swore in Hopkins and Townsend for the purpose of making the arrest of one of the rioters. They subsequently saw the sheriff of the county, informed him what the mayor had done, and told him that they intended to arrest John Delegal. The sheriff told them to "go ahead." They left Darien sometime on the afternoon of the 24th, stopped for the night at Hopkins's house, and at two o'clock in the morning started for the residence of Delegal, which was eighteen miles from Darien. They arrived at about daylight, aroused the occupants of the house, announced who they were, and stated that they had come to arrest Delegal. He inquired as to the reason for his arrest, and was told that it was because of his participation in the riot in Darien. He asked if they had a warrant; they replied that they had not, but that they had been sent by the sheriff. Delegal refused to be arrested, but proposed that he be allowed to take the train to Darien at 11 o'clock on that day and surrender himself to the sheriff. They declined to agree to this, and informed him that they intended to carry him to Darien with them, assuring him at the same time that they would do him no personal injury. Townsend told him they intended to arrest him, and would not "have any long talk" about it. Delegal replied, according to

the evidence for the State, "We will see about that." In his statement, made on the trial, Delegal said that he finally told Hopkins and Townsend, "I guess I will go. Let me get my pants," and then told his brother to unlatch the door that he might "see what he is going to do." His offer to go with them, if the remark made amounts to that, seems not to have been heard by Hopkins, the survivor. As the door was un-latched, Hopkins pushed it open and stepped into the house with the remark, "I am not afraid of you." At this time Del-egal appears to have been still at the window through which he had been conversing with Hopkins. As the latter entered the house, Delegal left the window, retreated to the back of the room, and seized his gun. As Hopkins entered the house, Town-send, the deceased, came up the steps and upon the porch or piazza, when Delegal shot and killed Townsend and shot at Hopkins, wounding him slightly. Delegal, in his statement, said that when he reached the corner of the room he heard some one say "I done killed one son of a bitch, and I don't mind killing another." He claims that he then saw Townsend throw up his gun as if to shoot, whereupon he shot Townsend. This is, in substance, the material part of the testimony. Under this evidence and the charge of the court, the jury re-turned a verdict of guilty. A motion for a new trial was made and overruled, and the accused excepted.

1. The court charged the jury upon the law which author-izes officers to arrest persons for misdemeanors or felonies with or without a warrant. This was excepted to and made the basis of two grounds of the motion for new trial. The evidence clearly showed that neither Hopkins nor Townsend was an officer of the State or county. They were not legally appointed, by any person authorized to make the appointment, as officers to make arrests. We have no knowledge of any law which authorizes the mayor of Darien to appoint deputy-sheriffs to make arrests, or to administer the oath of office to deputy-sheriffs. Nor do we know of any law which authorizes the sheriff, after an oath has been administered by such mayor, to send the persons thus sworn in to make arrests for a misdemeanor. Under all the evidence, these men were nothing more than private individ-

uals. It is a well-settled principle of the law of this State, and, as far as we are advised, of all other jurisdictions, that a private individual can not make an arrest for a misdemeanor, unless the offense is committed in his presence or within his immediate knowledge. Our Penal Code, § 900, declares that "A private person may arrest an offender if the offense is committed in his presence or within his immediate knowledge; and if the offense is a felony, and the offender is escaping, or attempting to escape, a private person may arrest him upon reasonable and probable grounds of suspicion." The offense for which the accused was sought to be arrested was a misdemeanor. It was not committed in the presence of either Hopkins or Townsend, nor, as far as appears from the evidence, did either of them have any immediate knowledge of the offense. Hopkins, the survivor, was doubtful, according to his own testimony, as to whether he was in Darien at all on the day of the alleged riot, but in the latter part of his testimony states he believes he was there in the afternoon when the troops arrived. At that time it appears that the riot, if there had been one at all, was over. We think, therefore, that it was error to give in charge the law relative to the authority of officers to make arrests. There is a difference between the power of an officer and that of a private individual to arrest without a warrant. An officer may make an arrest without a warrant, "if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." Penal Code, § 896. It was especially erroneous to give in charge the law and circumstances under which officers are authorized to make arrests, when the court in the charge made some of the instances of the power of an officer apply to private individuals. Thus, in the charge complained of in the eighth ground of the motion for new trial, the judge instructed the jury that Hopkins and Townsend had no legal authority to make arrests without a warrant, "unless it was reasonably proper to do so in order to prevent a failure of justice for want of an officer to issue a warrant." As before remarked, unless the offense is committed in the presence of a private individual or within his immediate knowledge, he can

not make any arrest for a misdemeanor. He has no power or authority to do so whether he has time to sue out a warrant or not. Where an offense is committed in his presence, he must arrest the offender then and there, and if he fails to do so immediately, his power to do so at all is gone. He has no power to arrest in order to prevent a failure of justice for the want of an officer to issue a warrant. This power is given to public officers only, and not to private individuals. An officer may arrest when the offense is committed in his presence or within his immediate knowledge, or if there is likely to be a failure of justice for the want of a proper officer to issue a warrant. The charge above quoted instructed the jury that a private individual had, under such circumstances, the same power as is possessed by an officer. This we think was erroneous. The charge complained of in the next ground of the motion for new trial was, for the same reason, also erroneous. In it the jury was instructed as follows: "Whether, under all the circumstances, including the facilities for obtaining a warrant, according to the spirit of the law, there was or was not cause for attempting the arrest, is a question, after all, for you to determine." This was in effect telling the jury that if there were no facilities for obtaining a warrant, a private individual had power to make the arrest without one. This charge seems to have been taken from the opinion in the case of *Thomas* v. *State,* 91 *Ga.* 207, where Bleckley, C. J., said: "Whether, under all the circumstances, including the facilities for obtaining a warrant, according to the spirit of section 4723 of the code above cited, there was or was not cause for attempting the arrest without a warrant, was a question for the jury." It will be seen from a reference to that case that the learned judge was discussing the powers and duties *of an officer* under that section of the code, now section 896 of the Penal Code, and not the powers of a private individual; so the charge, although extracted from one of the decisions of this court, was erroneous because not applicable to the facts of the present case. In the *Thomas* case the officer had been informed that a larceny had been committed in the forenoon, and he undertook, in the afternoon or evening, to make the arrest, and was resisted. The trial judge

stated to the jury, as a matter of law, that the officer had sufficient probable cause to attempt to make the arrest without a warrant, and this court held that this was error, and that the matter should in that case have been submitted to the jury.

2. Upon the trial of this case a witness was allowed to testify, over objection of counsel for the accused: "If I had undertaken to carry Henry Delegal down to that train, the result, in my opinion, would have been that Mr. Blount and I would both have been killed." This we think was error. It was simply the opinion of the witness, giving what he thought would have been his fate and that of the sheriff had they attempted to remove the prisoner from the jail to the railway-station for the purpose of taking him to the jail of another county. It was clearly irrelevant and immaterial, and was calculated to prejudice the minds of the jurors against the accused. In this connection, there was another exception to a ruling of the judge in admitting evidence as to the character and details of the alleged riot with which such evidence directly connected the accused. This ground, however, does not set out the evidence to which objection was made, referring instead to certain pages of the brief of evidence where the objectionable evidence is set out. This court has frequently ruled that it will not look to the brief of evidence to ascertain what was the evidence objected to. The proper way of making such a ruling the basis of a ground of a motion for new trial is to embrace the evidence objected to in the ground of the motion or to attach it as an exhibit to the motion. While we think it was probably erroneous to admit this evidence, we can not deal with it in an authoritative way without violating our former rulings. As this case is to be tried again, I will say for myself that I am inclined to think the true rule as to the admissibility of such evidence to be that where the arrest is made by a private individual when the offense has been committed in his presence or within his immediate knowledge, and he is resisted and injured by the party he seeks to arrest, he may give in evidence the fact that an offense was committed in his presence. If, however, the offense is not committed in his presence and he subsequently undertakes to make an arrest

for it, he can not justify the arrest or attempted arrest by proving that an offense was committed.    Nor can he justify by showing that an offense was committed in his presence and that he then waited two days before attempting to make the arrest.

3. The judge charged the jury section 73 of the Penal Code, which declares "If a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary; and it must appear, also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." The record discloses that there was no mutual combat between the accused and the deceased prior to the killing. Under these circumstances this court has frequently held that it is illegal and hurtful to the accused to give this section in charge. The matter has been so clearly discussed and settled in the following cases, that it is not necessary further to elaborate the question: *Powell* v. *State*, 101 *Ga.* 9, 22; *Teasley* v. *State*, 104 *Ga.* 738; *Parks* v. *State*, 105 *Ga.* 242; *Smith* v. *State*, 106 *Ga.* 673, 680.

4. A portion of the defendant's statement was as follows: "The third time he [Hopkins] said he did not have any warrant, I said I would not go.    He said: 'There is not a dam bit of use to talk that way.'    I said: 'I will come on the 11 o'clock train to-day.'    He said: 'No use to talk that way; you got to go.'    I said: 'I guess I will go.    Let me get my pants.'    Before I stepped back I said: 'Eddie, take the night-latch off; let me see what he is going to do.'"    In regard to this, the judge charged as follows: "If  .  .  Messrs. Hopkins and Townsend were engaged in executing an illegal arrest, if the defendant, after having demanded of them whether or not they had a warrant for his arrest and receiving a reply in the negative but was informed that they had come for the purpose of arresting him and they assured him that no violence would be done him and made other statements to him of a reassuring character, and notwithstanding these he declined to submit to arrest but subsequently (if you find from the evidence such to be the case) consented to go with these alleged officers, and in

pursuance to such consent they entered his house, after the latch had been taken off by some one within, they would be authorized in believing that they had a right to enter, and, if no demonstration was made by them of a character calculated to excite the fears of a reasonable man that bodily harm would be done him, and acting, not under the influence of such fears, but in a spirit of revenge, defendant fired upon these gentlemen, which resulted in the death of the deceased, it is for you to determine whether such shooting was or was not murder, in the light of the law heretofore given you in charge." This charge seems to have been based upon the words, "I guess I will go," and the fact that the door was unlatched by some one within the house. It could not have been based on any part of the evidence, for there was no evidence tending to show that the accused ever consented to the arrest or to the entry into his house. We are very doubtful as to whether the words used, even when taken in connection with the unlatching of the door, were sufficient to authorize a finding that the accused consented to the arrest or to the entry. They were scarcely intended as an invitation, for the next sentence, after instructing that the door be opened, was: "Let me see what he is going to do." Taking the whole of the statement together, these words are at least susceptible of a different construction from that placed upon them by this charge; but be that as it may, we are clear that it was erroneous to allow the jury to find that the entry was made in pursuance of this request. According to the testimony of Hopkins, the only witness testifying on the trial who was present at the time of the homicide, he did not hear the words and neither he nor the deceased acted upon them. Hopkins testified, in substance, that he heard the latch of the door raised and he immediately pushed the door open and entered the house, remarking as he did so, "I am not afraid of you." Townsend was closely following him when shot. Hopkins further testified that he had in his testimony detailed all the conversation that he and Townsend had with the accused, and all that was said by the accused. His testimony does not show that these words were used by the accused. Indeed he testified that it seemed to him that the accused was

refusing to go when the witness entered the house.   It was, therefore, impossible, according to the testimony of Hopkins, that he could have acted upon any invitation or consent, tacit or otherwise, on the part of Delegal.   If Hopkins and Townsend had understood that the accused was ready to surrender and willing to go with them, they would not have acted in the belligerent manner which they did, nor would Hopkins have been likely to use the expression, on entering, "I am not afraid of you."   The evidence clearly showing that they neither heard nor acted upon any invitation or expression of consent, it was error to submit to the jury the question as to whether they had done so or to instruct that if Hopkins and Townsend were acting upon such invitation or consent and the accused shot and killed the deceased, it was murder.   This charge was harmful and prejudicial to the accused, because it is the only theory deducible from the facts appearing in the case which would have authorized the jury to find him guilty of murder.

*Judgment reversed.     All the Justices concurring.*