## WHEELER v. THE STATE.

1. Where counsel for one on trial for murder, in writing, requested the court to give in charge to the jury section 71 of the Penal Code, "and in the course of his oral argument . . requested the court to give to the jury in charge the sections of the code in reference to justifiable homicide," the oral request, fairly interpreted, should not have been held to mean more than that the court was asked to give in charge so much only of those sections as was, under the evidence and the statement of the accused, pertinent and applicable to the case on trial.

2. There was nothing, either in the evidence or the statement of the accused, which warranted the judge in charging the law contained in section 73 of the Penal Code, and his doing so was, therefore, erroneous.

3. While it is not competent to impeach a witness by proving that he has led a life of moral turpitude, or has been guilty of immoral acts, a witness whose own testimony discloses that such are the facts with respect to his life and conduct may be thereby discredited, the jury being left free to determine for themselves what weight and effect should be given to such facts. While the instructions on this subject of which complaint is made in the present case were not technically correct, they were not, as applied to the evidence actually before the jury, substantially out of harmony with what is above announced.

4. Under the evidence in the case, there was no error in instructing the jury as follows: "You have a right to consider the circumstances and condition of any witness as proven to have been at the time of the incidents about which said witness testifies. You may consider such condition of any witness as to soberness, the surroundings of such witness, with reference to determine whether or not such witness was in a condition to see and understand what was occurring."

5. Declarations made by one actually in a dying condition and conscious of the fact are admissible as dying declarations, notwithstanding the fact that a physician, either before or after such declarations were made, informed the declarant that there was a chance for him to recover.

6. Whether after certain declarations were, without objection, admitted as a part of the res gestæ, it was or was not proper for the court to leave to the jury the question of their competency, so doing was certainly not erroneous as against one holding the position that such declarations were incompetent as evidence.

7. It is not erroneous to refuse to allow a witness to testify to his opinion as an expert, when it does not affirmatively appear that he is an expert with respect to the matter in which his opinion is sought.

Argued October 18, — Decided October 29, 1900.

Indictment for murder.  Before Judge Candler.  Fulton superior court.  September 3, 1900.

*Arnold & Arnold* and *Felder & Rountree*, for plaintiff in error. *C. D. Hill, solicitor-general*, and *W. J. Albert*, contra.

FISH, J.  Ike Wheeler was convicted of voluntary manslaughter, for the killing of John C. Hambrick, and upon the overruling of a motion for a new trial excepted.

1. The first ground of the amended motion for a new trial complained that the court erred in charging section 73 of the Penal Code, viz.: "If a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary; and it must appear, also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given."  The trial judge, in approving this ground of the motion, stated that "The charges which are complained of in the 1st and 3rd grounds were requested by defendant's counsel, as follows: section 71 of the Criminal Code was requested to be given in writing, and in the course of his oral argument defendant's counsel requested the court to give to the jury in charge the sections of the code in reference to justifiable homicide.  Under the written and oral requests I gave the charge, the first ground as amended motion."

We think the oral request made by counsel during his argument to the jury, fairly interpreted, should not have been held to mean more than that the court was asked to give in charge so much only of those sections as was, under the evidence and the statement of the accused, pertinent and applicable to the case on trial.  The rule is that all requests to charge should be in writing; and even if counsel for the accused could be held bound by an oral request to charge, made during his argument to the jury, this should not be done unless the request was made in unequivocal terms.  To charge the section quoted was not only unauthorized by the evidence, but was

against the interest of the accused; and there should be no presumption that his counsel, by a mere general request to charge the law of justifiable homicide, meant to ask the court to give this section in charge to the jury.

2. The court erred in giving in charge the provisions of section 73 of the Penal Code. We have critically examined the evidence, and the statement of the accused, and can find nothing in either which tends to show that there was a mutual combat between the accused and the deceased preceding the homicide; and it is well settled that this section is only applicable to cases where the homicide follows a mutual combat. *Delegal* v. *State*, 109 *Ga.* 518; *Stubbs* v. *State*, 110 *Ga.* 916; *Ragland* v. *State*, 111 *Ga.* 211.

3. Error is assigned upon the following charge: "A witness may be discredited by showing that such witness has been living a life of moral turpitude or of committing immoral acts; the effect and weight of such evidence in all cases to be determined by the jury." The rule is that a witness can not be impeached by proof that he has led a life of moral turpitude, or has been guilty of immoral acts, but, when a witness's own testimony discloses that such are the facts with respect to his life and conduct, the jury may consider such evidence in determining the credibility of his testimony, the weight and effect of such facts being entirely for the jury. From the testimony of the main witness for the accused it appeared that she had led a life of great moral turpitude; and while the charge excepted to was not technically correct, it was not substantially erroneous when applied to the evidence actually before the jury. No attempt had been made by the State to impeach her, or any other witness for the accused, by proving such facts; but as they appeared from the evidence which fell from her own lips, the jury had the right to take them into consideration when considering and weighing her testimony.

4. There was no error in giving the charge quoted in the fourth headnote. The error assigned thereon is that it was argumentative, and singled out and was made applicable to a particular witness of the accused. The instruction was general, and there was evidence to support it, and it certainly was not erroneous because it may have been applicable to only one witness.

5. Certain alleged dying declarations of the deceased were admitted in evidence over the objection of the accused, " on the ground

that what [the deceased] was undertaking to relate was before Dr. Cooper conferred with him, and that Dr. Cooper notified him later that there was a chance for him, and that was an operation; . . that he could not have known that he was in extremis, because he was afterwards notified by the physician that there was a chance." It appears from the record that the alleged dying declarations were made by the deceased both before and after Dr. Cooper had informed him that there was a chance for him to recover if an operation were performed. The witnesses who testified to the declarations swore that the deceased, at the time of making them, said he was going to die; that there was no chance for him; and the evidence shows that he did die within less than a day thereafter. The deceased appears to have been conscious of his condition, to have realized that there was no chance for his recovery, when he made these declarations, and, despite the surgical operation, the after event justified his belief. We think, therefore, that these declarations of the deceased were properly admitted as being, prima facie, dying declarations, the jury being instructed to consider them as evidence in the case only in the event they believed that these declarations were made by the deceased in the apprehension and immediate prospect of death and in the article of death.

6. The court admitted in evidence, as res gestæ, certain declarations of the deceased made soon after he was shot. One of the grounds of the motion for a new trial alleged error in the admission of these declarations over the objection of the accused. In certifying this ground of the motion the judge so qualified his approval of the same that counsel for the plaintiff in error abandoned the ground here, admitting in their brief that such ground had not been approved. So we must treat these declarations as having been admitted without objection. In his charge to the jury, the judge instructed them as to the meaning of res gestæ and when declarations were admissible as a part thereof, and left to the jury the question whether or not the declarations which he had admitted in evidence were, or were not, a part of the res gestæ, at the same time instructing them that if they believed these declarations to be a part of the res gestæ, they should consider them as evidence in the case, and if they did not so believe, they should not consider them; thus leaving their competency to the jury. Granting that the question whether these declarations were competent evidence or not was one for the

court alone, and bearing in mind that they were before the jury without objection, the plaintiff in error, who contends that they were not competent, has no reason to complain because the court left to the jury the determination of the question whether these declarations should be considered by them as evidence in the case. The declarations being before the jury without objection, as we must assume, it was to the interest of the accused that the jury should be allowed to determine whether or not they would accept them as evidence in the case.

7. Complaint was made in the motion for a new trial that "the court erred in refusing to allow the witness Golucke to give his opinion as an expert as to whether a person in the room occupied by Miss Ida Rice [a witness for the State] on the night of the homicide, with the door open, could hear a conversation, even in a loud voice, going on in Lorena Wheeler's room," where the deceased was shot; counsel for the accused stating that they expected to show that, in the opinion of the witness, it was impossible for Miss Ida Rice to have heard such a conversation. Further complaint was made because the court erred in refusing to allow the witness Bleckley to give his opinion upon the same subject, as an expert. There was no evidence that either Golucke or Bleckley was an expert in acoustics. Golucke testified that he was an architect, but that he did not know whether he was an expert in acoustics or not. Bleckley simply testified to making a diagram and certain measurements of the room in which the shooting was done. It, therefore, not affirmatively appearing that either of these witnesses was an expert with respect to the matter on which his opinion was sought, it was not, in either instance, erroneous to refuse to allow the witness to testify what his opinion upon such subject was.

Complaint was made in the motion for a new trial that the court erred in defining the offense of voluntary manslaughter to the jury. As there was no voluntary manslaughter in the case, in any view of the same, either under the evidence for the State or that submitted in behalf of the accused, or the defendant's statement, and as presumably the evidence will be practically the same upon another trial, which must be granted upon other grounds, we deem it unnecessary to determine whether or not the court erred in defining this offense. *Judgment reversed. All the Justices concurring.*