## FREEMAN *v.* THE STATE.

1. When on the trial of a case no evidence tending to impeach any witness in any of the modes prescribed by law was introduced, failing to charge on the law relating to the impeachment of witnesses was not erroneous ; and even if such evidence had been introduced, a party desiring the judge to instruct the jury in this branch of the law ought to have presented an appropriate written request to this effect.

2. When objection was made to oral proof of a dying declaration on the ground that it had been reduced to writing by the witness, and he thereupon produced an unsigned paper purporting to embrace such declaration, and testified that he took down its contents exactly as stated by deceased, and that, after so doing, it was read over to the latter and he pronounced it correct, there was no error in admitting the paper. Excluding an irrelevant and inadmissible part of such writing was certainly proper.

3. It was, in a trial for murder, erroneous to charge the law embraced in the Penal Code, § 73, when there was nothing, either in the evidence or the statement of the accused, to warrant even an inference that there had been a mutual combat between the parties, and the defense was planted squarely on the law contained in the Penal Code, §§ 70, 71.

4. When in a trial for murder neither the evidence nor the statement of the accused is such as to authorize a charge upon the law of voluntary manslaughter, no instructions on this branch of the law should be given.

5. A request to charge, which embraced an instruction that a killing might be justified by a fear in the mind of the slayer of "great bodily harm" amounting to less than the commission of a felony upon him, was properly refused.

Argued October 17, — Decided October 29, 1900.

Indictment for murder. Before Judge Felton. Bibb superior court. September 17, 1900.

*John R. Cooper* and *Augustin Daly*, for plaintiff in error.

*J. M. Terrell, attorney-general,* and *Robert Hodges, solicitor-general,* contra.

LEWIS, J. Wiley Freeman was indicted by the grand jury of Bibb county, for the murder of James Dean. Upon the trial of the case, the jury returned a verdict of guilty, with a recommendation for life imprisonment; whereupon the accused moved for a new trial, and excepts to the judgment overruling his motion.

1. One ground in the motion for a new trial is, that the court erred in not charging on the subject of impeaching witnesses by proving bad character; in other words, in not charging section 1027 of the Penal Code. Upon examining the record we fail to find in it any effort to formally impeach a witness by virtue of the provisions of that section. It is claimed by counsel for the accused that the

testimony of the deceased, whose dying declaration was admitted in testimony, was impeached by proving that the latter was just out of the penitentiary, where he had served a term of eight years for burglary.   It does not appear that any request was made of the court to give in charge the law on the subject of impeachment.   There is nothing in the record showing that the deceased had served a term in the penitentiary, save the statement of the accused; but even if there was, this is not such proof.   While it may be considered by the jury to the discredit of a witness, it is not the formal method of impeachment prescribed by the statute.   Even if the witness had been formally impeached, as prescribed by the statute, by proof of general bad character, we think a party desiring the judge to instruct the jury on this branch of the law ought to have presented a proper written request to this effect.   Certainly there is no error in not charging the law of impeachment where no request has been made, when the record shows there was nothing reflecting upon the character of the witness attacked, save what was said by the accused in his statement.   *Huff* v. *State*, 104 *Ga.* 521; *Bass* v. *State*, 103 *Ga.* 228.

2. Another ground in the motion for a new trial is, that the court erred in admitting the testimony of one Wright in regard to the dying declaration of the deceased.   It appears from the note of the court on that ground that defendant's counsel objected to the witness testifying orally to the statement of the deceased, upon the ground that he, Wright, had reduced this statement to writing, and therefore the writing was the highest evidence.   The solicitor then offered the writing contained in the motion, accompanying it with the evidence found in the brief as to the manner in which it was taken down.   Defendant's counsel then objected to the paper containing the statement as written down by Wright, upon the ground that the paper was not properly executed nor signed by deceased. The written statement of the deceased, as drafted by the witness, was admitted in evidence over this objection.   The witness himself swore that when the deceased made his dying statement to him he took it down in writing, and after having read it over to the dying man, he ratified it and confirmed it as correct.   We think the court did right, in the light of the parol evidence, in admitting the written statement in evidence, although the same had never been signed by the party who made the statement.   On this point

the evidence was that he was too weak to sign his name, and, when asked to sign it, gave this as a reason why he could not attach his signature.  There is nothing in the statute that requires a dying declaration to be in writing; or, if reduced to writing by one who hears the statement, there is no law requiring its signature by the witness.  In fact, it is a well-recognized principle of law that, unless required by statute, a written instrument does not require the signature of all parties thereto.  See 7 Am. & Eng. Enc. L. (2d ed.) 142, and numerous authorities cited in the notes, where the rule is announced that if an instrument has been signed by one and delivered to another, the latter may bind himself as fully by accepting the delivery as if he had attached his manual signature to the writing.  Without signing a contract one may become bound by it if he recognizes and adopts its stipulations.  What is true in that particular of contracts would certainly be true of a writing containing a dying statement which has been read over to the party making the declaration, and ratified and confirmed by him before his death.

The judge further says in his note that defendant's counsel also objected to the paper on the further ground that some part of it was merely the opinion of the deceased, and that the solicitor-general had no right to put in a part of the paper without putting it all in evidence, and objecting to all or any part of the paper.  He added that he admitted the entire paper except that portion of it which was objected to by movant's counsel, containing the following words:  "I think he ought to be hung if I die, and hope that he will be."  It is not contended by counsel for the accused that he desired that portion of the statement to go to the jury.  It was manifestly irrelevant and inadmissible, and the court did right in cutting it off from the paper before handing it to the jury, excluding such an expression entirely from their consideration.  It certainly worked no disadvantage or harm to the accused.

3. Another ground in the motion for a new trial is, that the court erred in charging the law embraced in Penal Code, § 73, on the ground that this section was inapplicable to the facts proved in the case, and was calculated to mislead the jury.  Upon a careful review of the testimony, we think this ground is well taken.  The evidence for the State and in behalf of the accused was hopelessly in conflict.  The testimony of the State made out a clear case of

murder, without any justification or modification whatever. The statement of the accused made a case of justifiable homicide. He introduced no testimony. Certainly that was his contention in the trial of the case below. There was nothing in the evidence upon either side, or in the statement of the accused, which would authorize the inference that there was any mutual combat between the parties, which, under repeated rulings of this court, would have justified giving in charge to the jury the principle of law embodied in the Penal Code, § 73. The defense was based upon sections 70 and 71, and not upon the idea, by any sort of construction of the facts testified to, of which we can conceive, that there was a mutual combat between the parties; and therefore the defendant, to justify the killing, had to show "that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary; and it must appear, also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." That section, as has been repeatedly decided by this court, refers to cases of mutual combat. *Powell* v. *State*, 101 *Ga*. 11, and opinion on pp. 24–5. The case of *Stubbs* v. *State*, 110 *Ga*. 916, announces the principle that "The provisions of law relating to justifiable homicide where the parties had been engaged in mutual combat, contained in section 73 of the Penal Code, are not applicable to a case where there has been no mutual combat, and where the defense relied upon is that contained in sections 70 and 71 of the Penal Code." See authorities cited in that case. See also *Delegal* v. *State*, 109 *Ga*. 518 (3), where this court decided: "Where there was no evidence of any mutual combat between the deceased and the accused preceding the homicide, it was error to give in charge to the jury the provisions of section 73 of the Penal Code." See opinion of Chief Justice Simmons on p. 524, citing authorities. See also *Wheeler* v. *State*, ante; 43.

4. We fail to find anything, either in the facts introduced on the trial or in the statement of the accused, to authorize a charge upon the law of voluntary manslaughter. Some of the grounds in the motion for a new trial object to instructions upon the part of the judge in charging the jury on the subject of voluntary manslaughter. The accused in the present case, however, was convicted of murder, and not of voluntary manslaughter. We do not mean to say the

error in charging on the subject of voluntary manslaughter would, of itself, have necessitated a reversal of the judgment of the court below, as the accused was convicted of a greater offense, and therefore the charge could have had no effect on their finding. · *Robinson* v. *State*, 109 *Ga.* 506. As the case will go back for another trial, however, we announce the rule of law upon that subject, in order to prevent a repetition of the error.

5. Another ground in the motion is, that the court erred in refusing to give the following written request of defendant's counsel to the jury: "While words, threats, menaces, and contemptuous gestures will not in any case authorize one person to kill another merely to resent the insult or provocation thus given, yet the very words, threats, menaces, and contemptuous gestures may in some cases be enough to excite the fears of a reasonable man that his life is in danger, or that great bodily harm is about to be done him, so that he would be justified in the killing. All of which is to be judged by the jury under the particular circumstances of each case." That portion of the request to charge which justifies a killing should the slayer apprehend "great bodily harm" from the deceased was not authorized by any law, and therefore the court committed no error in refusing to give in charge the request made. The injury, to justify a killing caused by an assault made by the deceased, must be an attempt to commit a felony of some sort, and bodily harm might be inflicted without any such intent.

The above disposes of all the grounds of the motion for a new trial which present for decision here any question worthy of special notice.　　　*Judgment reversed.　All the Justices concurring.*