## JORDAN *v.* THE STATE.

117 405
Case 2
119 565

117 405
Case 2
122 431
123 128
123 549
117 405
Case 2
125 141

1. Penal Code, § 73, is not applicable in a case where there is no evidence showing or tending to show that there was a mutual combat between the accused and the deceased, or any agreement between the parties evidencing a mutual intention to fight.

2. The law embodied in the Penal Code, § 73, should never be given in charge to the jury in such a way as to confuse it with that contained in sections 70 and 71.

3. On the trial of an indictment for murder, where neither the evidence nor the statement of the accused warrants a conviction of involuntary manslaughter, it is error to charge the law relating thereto, and to instruct the jury that if they see proper they may find the accused guilty of that offense.

Argued February 17,— Decided March 17, 1903.

Indictment for murder. Before Judge Estes. Franklin superior court. November 20, 1902.

*A. G. & J. B. McCurry, T. G. Dorough, W. R. Little,* and *J. N. Worley,* for plaintiff in error.

*C. H. Brand, solicitor-general,* contra.

CANDLER, J. Jordan was tried in Franklin superior court upon an indictment charging him with the murder of Starr, and was found guilty of involuntary manslaughter in the commission of an unlawful act. He moved for a new trial, his motion was overruled, and he excepted.

1. Under the evidence in the record before us, we think it was erroneous for the trial judge to give in charge to the jury the law embodied in the Penal Code, § 73. It appears that when the accused and the deceased met, on the occasion of the killing, the deceased called the accused aside, and that a short conversation between the two immediately preceded the firing of the fatal shot. According to the theory of the State, the deceased endeavored to explain and amicably adjust a previous difficulty between the two, when the accused applied a profane epithet to him, and without provocation shot and killed him. The defense contended, on the other hand, that the purpose of the deceased in calling the accused aside was to provoke a quarrel; that the deceased drew, or attempted to draw, a pistol; and that the accused, in killing the deceased, acted under the fears of a reasonable man that his life was in danger. There was no evidence of a mutual combat,— of the peculiar state of facts to fit which the provisions of the Penal Code, § 73, were enacted into law; and it was therefore error to give that section in charge to the jury. See *Powell* v. *State,* 101 *Ga.* 9 ; *Dover* v. *State,* 109 *Ga.* 485 ; *Delegal* v. *State,* 109 *Ga.* 518 ; *Stubbs* v. *State,* 110 *Ga.* 916 ; *Wheeler* v. *State,* 112 *Ga.* 43 ; *Freeman* v. *State,* 112 *Ga.* 48 ; *Mell* v. *State,* 112 *Ga.* 79 ; *Moultrie* v. *State,* 112 *Ga.* 121 ; *Heard* v. *State,* 114 *Ga.* 90.

2. Just before giving in charge to the jury the code section to which we have referred, the judge read to them sections 70

and 71, and he prefaced his charge as to section 73 with the following language: "In that connection I will read to you another section that may be considered by the jury as part of the same transaction." The motion for a new trial complains that it was error to thus give in charge to the jury the law covered by these different sections, in such a way as to confuse them. Under the ruling of this court in the case of *Pugh* v. *State*, 114 *Ga.* 16, we are constrained to hold that this point in the motion is well taken. The court, in a note to this ground of the motion, certifies that while he did give in charge to the jury sections 70, 71, and 73 of the Penal Code, he "did not do so in such a way as to confuse the jury." His language, however, speaks for itself, and to charge section 73 "in connection with" sections 70 and 71, and "as part of the same transaction," could not fail to have that tendency. There are, of course, cases in which the principles embodied in all three of these sections may with propriety be given in charge, though, as will have been seen from the first division of this opinion, section 73 was not applicable to the present case. In no event, however, should they be given in such a way as to confuse the jury or lead them to believe that they are applicable to the same state of facts. Sections 70 and 71 provide for the defense of one who is apparently in serious danger and who is not himself a violator of the law; section 73 for one who has violated the law, but is seeking to desist from a further violation, and who is in good faith endeavoring to withdraw from a difficulty into which he has previously entered. *Mell* v. *State*, supra. Under the charge as given, "as part of the same transaction," the jury in the present case might well have come to the conclusion that the accused was acting under the fears of a reasonable man, and yet that it was incumbent upon him to get away from the deceased in order to be justified.

3. The motion also complains that in recharging the jury, at their request, after they had retired to consider the case, the court erroneously charged the law of involuntary manslaughter. Without going into the question whether or not the charge on this subject was accurate, it is sufficient to say that in no view of the case was a charge on the law of involuntary manslaughter in any sense appropriate. The jury might with propriety have convicted the accused of murder or of voluntary manslaughter; on the other

hand, there was evidence to justify an acquittal. The only verdict possible which was wholly unauthorized by the evidence was the verdict returned. The trial judge very properly omitted any reference to this subject in his original charge, and the colloquy between the jurors and the court shows plainly the reason for his falling into the error on his supplemental instructions. That error is one which, under many decisions of this court, requires the grant of a new trial. While mistrials are generally misfortunes, and often result in a miscarriage of justice; and while courts should do everything possible, within the limitations of their power, to aid juries in reaching a verdict, no instruction should be given to the jury for the purpose of enabling them to reach a verdict which does not speak the truth under any view possible to be taken of the evidence.

The motion for a new trial contains numerous other grounds, none of which are of sufficient importance to be discussed here. The case is remanded for a new trial solely on the ground of the errors pointed out in the foregoing.

*Judgment reversed. By five Justices.*