ROBERTS *v.* THE STATE.

No. 12947.   September 15, 1939.   Rehearing denied October 14, 1939.

38

*D. D. Veal* and *Sydney H. Baynes,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, C. S. Baldwin Jr., solicitor-general, E. J. Clower* and *H. E. Smith, assistant attorneys-general,* contra.

DUCKWORTH, Justice. ■ Grounds 1 and 2 of the amendment to the motion for a new trial complain because the defendant's request to be sworn and examined by counsel for the State and for the defendant was denied in the following language: "I am going to let him make a statement. The law does not allow a defendant to be sworn and examined." In support of these grounds it is contended that the provisions of the Code, § 38-415, are designed for the benefit and protection of a defendant; and that the part of the section to the effect that the prisoner shall not be compelled to answer any

question on cross-examination, should he think proper to decline to answer, implies a right of the defendant to be examined and cross-examined under oath, despite the explicit provision of the statute that "it shall not be under oath." Cited in support of these contentions is the Code, § 102-106, which provides that a person may waive or renounce what the law has established in his favor when he does not thereby injure others or affect the public interest; and it is argued that this section authorized the plaintiff in error to waive the provisions of law that his statement should not be under oath and that he should not be compelled to answer questions on cross-examination. A very earnest argument is made by counsel against the wisdom of prohibiting a defendant from testifying under oath in his own defense. Counsel insists that the humane policy of modern criminal law has altered conditions which existed in the days when the accused could not testify in his own behalf. But such arguments, while they may be good reasons for the legislature to amend the law as it now stands in Georgia, could hardly be considered as reasons why the courts should refuse to recognize and uphold the law as it now stands. At common law a defendant in a criminal case could not be a witness for himself. Wolfson *v.* United States, 101 Fed. 430, and the authorities cited in the opinion. This State has never enacted any statute changing in this respect the rule of the common law. The Code of 1863, § 3772, declared that witnesses are incompetent "who are interested in the event of the suit." If it be said that by the use of the word "suit" this section is applicable only to civil cases, our reply is that the article, composed of a number of sections on "the competency of witnesses," has nothing to indicate any change in the common-law rule as to defendants in criminal cases. By the evidence act of 1866 (Ga. L. 1866, p. 138), which as amended is now Code § 38-1603 et seq., it was declared: "In all cases hereafter tried, no person offered as a witness shall hereafter be excluded, by reason of incapacity from crime or interest, or from being a party, from giving evidence . . on any inquiry arising in any suit, action, or proceeding, civil or criminal, in any court," except as therein provided. By section 2 of that act the following provision was made: "But nothing herein contained shall render any person, who, in any criminal proceeding, is charged with the commission of any indictable offence, or any offence punishable on summary conviction,

competent or compellable, to give evidence for or against himself, or herself." Code, § 38-416. From the quoted portion of section 2 of the evidence act of 1866 it is clear that the act was not intended to change the law with reference to defendants in criminal cases; and none of the acts amendatory thereof disclose any such intention. Such then was the status of our Code and statute law at the date of the passage of the act of 1868 on the subject of the prisoner's statement, appearing in the Code of 1933 as § 38-415. That section merely gave to the accused in a criminal case a right which he had not theretofore had. The extent of that right is clearly defined. In express terms it declares that the prisoner's statement "shall not be under oath."

While it is true that the statute (Code, § 38-415) clearly authorizes the defendant to waive his immunity to cross-examination, yet the provision denying the defendant the right to be put under oath is binding upon both the State and the defendant, and can be waived by neither. Had the defendant sought to waive his immunity to cross-examination without adding the further request that he be put under oath, he would have been entitled to that privilege; but when the request to waive immunity to cross-examination is coupled with the condition that he be put under oath, it is mandatory under the law that such a request be denied. *Lindsay* v. *State,* 138 *Ga.* 818 (8), 824 (76 S. E. 369), does not support the contention of the plaintiff in error, but, on the contrary, is authority for the ruling here made. The trial court was there sustained in the exercise of its discretion in denying defendant's counsel the privilege of asking the defendant questions after he had been examined by the State's counsel; and in support of the ruling there made, this court quoted from *Brown* v. *State,* 58 *Ga.* 212, as follows: "In making his own statement to the court and jury, the prisoner is not under examination, and his counsel has no right to ask him questions. Doubtless the court might, at the prisoner's request, permit questions to be put to him, as matter of discretion." While we do not find where this court has ever ruled on the exact question presented by this record, the Court of Appeals in *King* v. *State,* 24 *Ga. App.* 49 (99 S. E. 784), correctly stated the rule of law applicable to the facts of this case: "While the defendant in a criminal case may make to the jury a statement in his own behalf not under oath, which may be received in whole or in part by the

jury in preference to the sworn testimony, he is not a competent witness in the case, and can not be sworn as such. While he may be cross-examined not under oath, if he consents thereto, an offer by his counsel to put him under oath and permit him to be cross-examined was properly rejected by the trial judge." These assignments are without merit.

■ Grounds 3, 4, 5, and 6 of the amendment to the motion for a new trial assign error because juror J. Q. Wyatt was alleged by A. E. Kitchens to have made the statement on the day before the trial, in the presence of Mr. Kitchens and Mr. Smith while the three were traveling in an automobile, that he would love to be on the jury that tried the defendant, and that the defendant ought to go to the electric chair. This alleged statement of the juror was called to the attention of the judge by counsel for the defendant immediately after he learned of it, with the request that the juror be required to retire and the trial proceed with eleven jurors, to which the solicitor-general objected. The court asked if it was agreed that the juror be brought out, leaving the other eleven in the room, stating that the court intended to see that it was done fairly to both sides. Mr. Baynes, of counsel for the defendant, said, "Yes, sir; we will agree to it if that is the only way to do it." The court then instructed the officer to bring the juror from the jury-room, stating, "It is done at your request?" to which Mr. Florence, of counsel for the defendant, replied: "Yes, sir." The juror was brought out, and the charge of his disqualification was read by the court reporter. The juror said, "I didn't say no such a thing." Thereupon Kitchens was sworn and testified that the juror did say that he would like to be on the jury that tried Mr. Roberts and that he ought to go to the electric chair, but denied that the juror called the defendant a vile name. The juror testified, that he made no such statement; that the defendant had always been nice to him; that he would rather not be on the case, but that if he was he would give it every consideration and see that the defendant got justice; that the entire conversation was brought up by Mr. Kitchens; and that he (the juror) had no bias or prejudice in the case, and was sure he could give the defendant a fair trial. Mr. Baynes, of counsel for the defendant, testified that Kitchens told him that the juror called the defendant a vile and profane name. Willie Clyde Smith testified that he and Mr. Kitchens were

on the front seat in the car, that the juror Wyatt was on the back seat, and that he heard no conversation relative to the trial of Mr. Roberts. The court, after hearing the evidence, ruled that the juror was qualified, and he returned to the jury-room. While all of the jurors were locked in a separate room, the audience in the court-room applauded some statement made by the judge relating to the case, and the judge reprimanded the audience for such conduct.

When the qualification of a juror who has qualified on the voir dire questions is raised, as was done in this case, the judge becomes the trior of the fact whether the juror in question is qualified. While the juror will not be permitted to testify in the first instance as to his qualification, yet when evidence of his disqualification is heard, it is fair and proper that he be permitted to testify on that issue. *Nesbit* v. *State,* 43 *Ga.* 238; *Carter* v. *State,* 56 *Ga.* 463 (3); *Norton* v. *State,* 137 *Ga.* 842 (6) (74 S. E. 759); *Polk* v. *State,* 148 *Ga.* 34 (95 S. E. 988). In *Norton* v. *State,* supra, the question presented was very similar to that in the instant case; and this court held that it was not error to call the juror from the jury-room and permit him to testify as to his qualification. In *Nesbit* v. *State,* supra, this court held that when a juror has answered the statutory voir dire questions and has been pronounced competent, and his competency is challenged before the court as trior, primary evidence of the untruthfulness of his answers must be offered, and the juror can not be questioned to prove his incompetency; but that after the introduction of such primary evidence it is within the province of the court to hear the juror or examine him as to his explanation in the premises. In the opinion it was said: "The object of the law is to procure fair and impartial men; and while the formation or expression of an opinion upon mere rumor is not sufficient to disqualify a juror, yet much depends upon the opinion of the court, under all the circumstances in evidence, to see whether he has bias or prejudice. . . The judgment of the court on this subject is seldom reversed, and therefore the conscious responsibility of the judgment should weigh in the consideration of the court. In the case before us we think there was no error in the view he took of the law upon this subject." The evidence heard by the court abundantly supported his judgment that the juror in question was qualified. Orderly procedure in the trial courts requires that in such cases the judge seek to determine the truth and render such

judgment as the evidence before him authorizes. To hold that the mere statement, or even the testimony, of one not connected with the trial of the case, to the effect that one of the jurors trying the case is biased or disqualified, requires as a matter of law a mistrial or a disqualification of the juror in question, would be to make it possible to prevent the completion of the trial of any case. While the defendant on trial is entitled to a fair and impartial jury, there must of necessity repose in some official the authority and duty to determine that this is done; and under our system that responsibility is placed upon the trial judge, whose judgment after a full and fair hearing will not be reversed simply because there is some conflict in the evidence.

The assignment of error on the refusal to declare a mistrial because of handclapping and demonstration by the audience in the court-room, showing as it does that the jury was locked in a separate room, shows no ground for a new trial. Clearly this demonstration, not in the presence of the jury, could not possibly have prejudiced the jury against the defendant, as contended. So far as appears, the jury did not know whether the demonstration, if they even heard it, was because of some development favorable to the defendant or adverse to him, or whether it related to a matter entirely foreign to the case. Neither of these assignments presents any ground for reversal.

■ Ground 7 of the motion for a new trial complains because the court instructed the jury generally on the subject of voluntary manslaughter, but did not charge upon the law of voluntary manslaughter as based upon the theory of mutual combat. There is no evidence in this record, including the defendant's statement, that would have authorized a charge of Code § 26-1014. A vital and essential element of mutual combat is that both parties intended to engage in a fight. *Benton* v. *State,* 185 *Ga.* 254 (5) (194 S. E. 166). There need not be any blows struck by one of the parties, provided it appears that both intended to fight. *Gresham* v. *Equitable Accident Insurance Co.,* 87 *Ga.* 497 (13 S. E. 752, 13 L. R. A. 838, 27 Am. St. R. 263) ; *Trice* v. *State,* 89 *Ga.* 742 (15 S. E. 648) ; *Buchanan* v. *State,* 153 *Ga.* 866 (113 S. E. 87). In *Pugh* v. *State,* 114 *Ga.* 16, 18 (39 S. E. 875), quoting from *Teasley* v. *State,* 104 *Ga.* 738 (30 S. E. 938), this court said: "The law embraced in section 73 of the Penal Code [Code of 1933, § 26-1014]

does not qualify or limit the law of justifiable homicide as laid down in sections 70 and 71 of that Code [§§ 26-1011, 26-1012]. The section first mentioned applies exclusively to cases of self-defense from danger to life arising during the progress of a fight wherein both parties had been at fault." In *Jordan* v. *State,* 117 *Ga.* 405 (43 S. E. 747), when the accused and the deceased met on the occasion of the killing, the deceased called the accused aside, and after a short conversation between the two the fatal shot was fired. The State contended that the deceased endeavord to adjust a previous difficulty, but that the accused applied a profane epithet to him and without provocation shot and killed him. The defendant contended that the purpose of the deceased in calling the accused aside was to provoke a quarrel, and the accused in killing the deceased acted under fears. In that case this court held: "There was no evidence of a mutual combat,—of the peculiar state of facts to fit which the provisions of the Penal Code, § 73 [§ 26-1014], were enacted into law; and it was therefore error to give that section in charge to the jury. See *Powell* v. *State,* 101 *Ga.* 9 [29 S. E. 309, 65 Am. St. R. 277]; *Dover* v. *State,* 109 *Ga.* 485 [34 S. E. 1030]; *Delegal* v. *State,* 109 *Ga.* 518 [35 S. E. 105]; *Stubbs* v. *State,* 110 *Ga.* 916 [36 S. E. 200]; *Wheeler* v. *State,* 112 *Ga.* 43 [37 S. E. 126]; *Freeman* v. *State,* 112 *Ga.* 48 [37 S. E. 172]; *Mell* v. *State,* 112 *Ga.* 78 [37 S. E. 121]; *Moultrie* v. *State,* 112 *Ga.* 121 [37 S. E. 122]; *Heard* v. *State,* 114 *Ga.* 90 [39 S. E. 909]." See *Mims* v. *State,* 188 *Ga.* 702 (4 S. E. 2d, 831). In the present case no witness gave testimony even intimating that the deceased made an attack upon the defendant or intended to fight him. While the defendant in his statement contended that the deceased made an attack upon him, he in no wise intimated that he was at fault or intended to engage in a fight with the deceased. This assignment presents no ground for a new trial.

■ In ground 8 of the amendment to the motion for a new trial complaint is made of the following excerpt from the charge: "When the killing is proved to be the act of the defendant, the presumption of innocence with which he enters upon trial of the case is removed from him, and the burden is then upon him; but, as before charged, the evidence of such may be found in the evidence offered by the State to prove the killing, as well as by the evidence offered by the defendant." It is contended that this charge

stated an unsound principle of law, because the mere act of killing would not remove the presumption of innocence with which the defendant was clothed when he entered upon the trial; and that this error was not cured by a correct statement of the law in another part of the charge, because this part of the charge was not expressly withdrawn from the jury. Immediately preceding the charge excepted to, the court instructed the jury as follows: "I charge you further that the law presumes every homicide to be founded on malice where there are no circumstances or evidence of alleviation or justification or excuse; and the burden is on the slayer, whenever a homicide has been proved, to make out such circumstances of justification to the satisfaction of the jury, unless they appear from the evidence produced against him." By the use of the words, "but, as before charged," this instruction directly connected the two portions of the charge. In *Mann* v. *State*, 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934), the court charged the jury as follows: "When the killing is proved to be the act of the defendant, the presumption of innocence with which he enters upon the trial is removed from him, and the burden is then upon him to justify or mitigate the homicide; but, as before charged, the evidence to do this may be found in the evidence offered by the State to prove the killing, as well as by the evidence offered by the defendant." It will be noted that the charge there involved and the charge here excepted to are almost identical. In an opinion delivered by Mr. Justice Evans, after a wide review of outside authorities as well as the decisions of this court, it was held: "From this analysis of the prior adjudications of this court we conclude that in a case where the evidence adduced to establish the homicide presents two conflicting theories of fact, one based upon circumstances indicating malice and the other upon warranted inferences which negative its existence, then it becomes a question of fact, to be decided by the jury, as to which one of these inconsistent theories is in accord with the real truth of the occurrence. And in such case it is proper to charge the jury as was done in this case. The witnesses for the State testified to facts which excluded all idea of any palliation; the defendant's evidence showed mitigating circumstances; the charge of the court submitted this conflict in the evidence to the jury, and they were told, in substance, that if they found from the evidence that the homicide was without excuse or

extenuation, the killing would be murder. The charge was correct in its statement of the law, and was applicable to the facts of the case." The *Mann* case has frequently been cited and followed by this court. See *Boyd* v. *State,* 136 *Ga.* 340 (3) (71 S. E. 416); *Durham* v. *State,* 138 *Ga.* 817 (2) (76 S. E. 351); *Warren* v. *State,* 140 *Ga.* 227 (78 S. E. 836); *Johnson* v. *State,* 152 *Ga.* 457 (110 S. E. 211); *Key* v. *State,* 177 *Ga.* 329 (5) (170 S. E. 230). While it is true that where the evidence to prove the killing also shows mitigation, no presumption of malice will follow (*Bradley* v. *State,* 128 *Ga.* 20 (5), 57 S. E. 237; *O'Pry* v. *State,* 142 *Ga.* 600, 83 S. E. 228; *Surles* v. *State,* 148 *Ga.* 537, 97 S. E. 538; *Lively* v. *State,* 178 *Ga.* 693 (8), 173 S. E. 836), yet in the present case no part of the State's evidence to prove the killing showed mitigation, not even by the statements of the defendant made on the night and at the scene of the homicide. The charge complained of fairly presented to the jury the issues for their consideration, and was a sound statement of the law. This assignment is without merit.

■ The evidence supported the verdict, and the general grounds of the motion for a new trial are without merit.

*Judgment affirmed. All the Justices concur.*