## Wytheville.

INSURANCE COMPANY OF NORTH AMERICA *v.* GAMBLE & CO.

June 17, 1897.

1. CONTRACTS—*Sale by agent—Confirmation by principal.*—If an agent, having full authority to sell an article at a particular price, offers the article at that price, and the offer is accepted unconditionally, this completes the contract of sale, and it is unnecessary for the principal to confirm the sale, or for the agent to communicate such confirmation to the purchaser.

2. CONTRACTS IN WRITING—*Sale by agent—Authority to sell and notification of sale by telegram.*—An agent authorized by telegram to sell an article at a given price offered the article at that price, and the offer was accepted unconditionally, and the agent in the presence of the purchaser, prepared a telegram, which he sent to the principal informing him of the sale at the price fixed, adding "subject your confirmation." It was not the understanding of the parties that the words quoted should qualify the purchaser's rights.

     *Held:* This did not constitute a contract in writing so as to exclude evidence of conversations between the agent and the purchaser antecedent to and contemporaneous with the sending of the telegram.

Argued at Richmond.     Decided at Wytheville.

Error to a judgment of the Law and Chancery Court of the city of Norfolk, rendered November 19, 1895, in an action of *assumpsit,* wherein the defendants in error were the plaintiffs, and the plaintiff in error was the defendant.

                                         *Affirmed.*

The opinion states the case.

*Neely, Seldner & Warrington,* for the plaintiff in error.

*Borland & Wilcox* and *Loyall & Taylor,* for the defendants in error.

HARRISON, J., delivered the opinion of the court.

On the 19th of January, 1895, the Insurance Company of North America (plaintiff in error), owning a lot of damaged cotton left by the steamer "Mattadi," in the city of Norfolk, sent from Philadelphia the following telegram to William Lauder in Norfolk:

"Offered about forty-two hundred dollars for cotton left behind by Mattadi, about two ninety-four bales. Would you recommend selling whole lot for forty-five hundred dollars, if so will accept that price, notify those making offer."

Acting under the authority conferred by this telegram, Lauder offered the cotton to R. W. Gamble, of the firm of R. W. Gamble & Co. (defendants in error), the parties who had made the offer of $4,200, cotton merchants residing in the city of Norfolk. Lauder exhibited the telegram to Gamble, and urged him to buy the cotton at $4,500. Gamble at first declined the offer, but after some parleying accepted it, and agreed to take the cotton at the price named. Thereupon Lauder sent to the Insurance Company, on the same day, January 19th, the following telegram:

"Have sold cotton forty-five hundred dollars, subject your confirmation. I approve sale."

This telegram was sent on Saturday, after business hours in Philadelphia, and no reply was received until Monday, January 21st. On that day Lauder sent the following telegram to the Insurance Company:

"William D'olier offers forty-six hundred for Mattadi cotton."

But, before the receipt of this message in Philadelphia, the insurance company had on the same day sent the following telegram to Lauder, in Norfolk:

"Matatdi sale damaged cotton for forty-five hundred approved."

Lauder withheld from Gamble the information conveyed by this telegram until he could receive a reply to the William D'olier offer, which reply was to the following effect:

"Philadelphia, January 21, 1895. If not closed with Gamble, accept cash offer William D'olier, forty-six hundred."

Lauder thereupon sold and delivered the cotton to D'olier, and informed Gamble that the sale had been made in Philadelphia, without his knowledge or instrumentality, and the following message was dispatched by him to his principal, in Philadelphia:

"Norfolk, January 21, 1895. Have sold cotton to D'olier. Had not confirmed sale with Gamble, who is now dissatisfied, when I informed him sold in Philadelphia."

Gamble & Co., thereupon instituted this action against the insurance company, which resulted in a verdict and judgment in their favor for the damages sustained by reason of the failure of the defendant to deliver the cotton.

The plaintiff in error contends that, in order to a complete contract of sale between the parties, it was necessary for the insurance company not only to confirm the sale made by Lauder, but for Lauder to communicate that fact to Gamble; that unless that fact was communicated by Lauder to Gamble all that passed between them would go for nothing.

Upon consideration of the whole case as made in the court below, it satisfactorily appears that the jury were well justified in the conculsion reached by them. Viewing the case, as must be done in this court, from the standpoint of a demurrer to the evidence, it still more plainly appears that the facts of the case are with the defendants in error.

It is admitted that telegram No. 1, received by Lauder, conferred upon him full authority to sell the cotton for $4,500, if he approved.   Lauder exhibited this telegram to R. W. Gamble, and offered him the cotton at the price named. Gamble accepted the offer unconditionally, and Lauder informed his principal of the sale per telegram No. 2.   The words "subject your confirmation," contained in that telegram were inserted by Lauder after the sale was closed, he preferring, in his own interest, to have his authority re-affirmed.   It was not the understanding of the parties that these words should qualify Gamble's rights, which were fixed immediately upon his acceptance of Lauder's offer.

In the light of the evidence we do not think confirmation of the sale by the insurance company was necessary.   Lauder had full authority under telegram No. 1 to make the sale at $4,500.   He made the offer in pursuance of his authority, and Gamble accepted it without qualification or condition. Nothing further was necessary to give effect to the contract. The transaction was complete so as to bind both parties upon the acceptance of the offer by Gamble.   Because Lauder chose in his own interest to have his authority to make the sale re-affirmed by his principal could not prejudice the rights of Gamble, unless it was the understanding between them that the matter should be kept open for such confirmation, and the evidence does not warrant that conclusion.

It was objected that certain evidence of conversation between Lauder and Gamble antecedent to and contemporaneous with the preparing and sending of telegram No. 2 was improperly admitted, as tending to vary or contradict the terms of that telegram.   It is a mistake to suppose that the contract between these parties was evidenced by any one or more of these telegrams.   There was no written contract to be varied or contradicted by the evidence introduced.   The telegrams between Lauder and his principal, the insurance company, are of no importance, further than as evidence of Lauder's

authority to bind his principal. There was no error in admitting this evidence.

Exception was also taken to the instruction given by the court, and the court's refusal to give the instruction offered by the plaintiff in error. The instruction given by the court proceeded upon the idea that the sale was not complete unless confirmed by the insurance company, while the rejected instruction went further and announced that the sale was not complete unless the fact of such confirmation had been communicated by the company or its agent to Gamble, before the sale to D'olier.

While the instruction given was not in line with the view of the case taken by this court, still it was not prejudicial to the plaintiff in error. Indeed, it was more favorable to the plaintiff in error than to the defendant in error, and the judgment cannot be reversed on that account.

The judgment of the lower court must be affirmed.

KEITH, P., and BUCHANAN, J., dissent.

*Affirmed.*