## 607. LIGHTSY v. THE STATE.

1. This case is controlled by repeated rulings of the Supreme Court, that the law embraced in the Penal Code, §73, does not qualify or limit the law of justifiable homicide as contained in §§70, 71, and that instructions as to these two separate branches of the law of justifiable homicide should not be so given as to confuse the one with the other, or tend to perplex the jury in making appropriate application of the law to the facts.

2. In no view of the evidence or the statement of the accused was the law of justifiable homicide as laid down in the Penal Code, §73, applicable to this case, and the court erred in giving in charge that section.

3. In a homicide case where the evidence and the statement of the accused present only the conflicting theories of murder or justifiable homicide, it is error for the court to give in charge the law of voluntary manslaughter, and a verdict against the accused for that offense should be set aside.

4. The other assignments of error are without merit.

Conviction of manslaughter, from Chattooga superior court—Judge Fite. May 22, 1907.

Submitted July 18,—Decided August 8, 1907.

*J. M. Bellah, F. W. Copeland, W. M. Henry,* for plaintiff in error. *W. H. Ennis, solicitor-general, W. B. Shaw,* contra.

HILL, C. J. Bob Lightsy was tried for murder, and convicted of voluntary manslaughter, in the superior court of Chattooga county. He made a motion for a new trial, which was overruled. We find three of the grounds meritorious.

1. Under the evidence and the defendant's statement, the court erred in giving in charge section 73 of the Penal Code. The Supreme Court has repeatedly ruled that this section should never be given in charge unless there is some evidence tending to show that there was a mutual combat between the accused and the deceased, or an agreement between the parties indicating a mutual intent to fight. Among the many cases expressly so ruling, we cite *Powell* v. *State,* 101 *Ga.* 9, 29 S. E. 309, 65 Am. St. R. 277, where Mr. Justice Little elaborately treats the subject of justifiable homicide under the Penal Code, §§70, 71, 73, pointing out clearly when either or all of these sections would be applicable and when not. See also *Stubbs* v. *State,* 110 *Ga.* 916, 36 S. E. 200; *Wheeler* v. *State,* 112 *Ga.* 43, 37 S. E. 126; *Freeman* v. *State,* 112 *Ga.* 48, 37 S. E. 172; *Heard* v. *State,* 114 *Ga.* 90, 39 S. E. 909; *Jordan* v.

*State,* 117 *Ga.* 405, 43 S. E. 747. In this case there was no witness to the act of killing. The accused, by his statement, put his defense squarely on the Penal Code, §§ 70, 71. The evidence in behalf of the accused strengthened the position of self-defense made by the statement, and neither by the evidence nor the statement was there any fact or circumstance tending to show any mutual combat or any agreement evidencing a mutual intention to fight. 'The theory of the State was that the accused, after a quarrel with the deceased, threatened to kill him, armed himself, sought and found him, and without any real or apparent danger shot him as soon as he saw him. It is not necessary to give in detail the evidence of the State and the accused, or to attempt to evolve the truth from these conflicting theories. That is a problem for the jury. It is sufficient to state generally that under neither theory was the law of mutual combat as defined by the Penal Code, § 73, in any respect applicable. The evidence both for the State and the accused, including the defendant's statement, made a case of murder or justifiable homicide under the Penal Code, §§ 70, 71. Nevertheless the court, after giving to the jury a charge covering the code definitions of murder and voluntary manslaughter, further instructed them as follows on the subject of justifiable homicide: "Justifiable homicide is the killing of a human being in self-defense, or in defense of his person, as applicable to this case. A bare fear of any of those offenses to prevent which the homicide is alleged to have been committed shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge." Again, "If a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary; and it must also appear that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given, or that the deceased was manifestly intending or endeavoring, by violence or surprise, to commit a felony upon him." Now, this charge qualified the right of self-defense as laid down in the Penal Code, §§ 70, 71, by the more exacting limitations of justifiable homicide under § 73.

This charge was calculated to impress the jury with the fact that the law of justifiable homicide would not give the right in self-defense to slay one who was manifestly intending and endeavoring by violence or surprise to commit a felony on his person, unless it also appeared that the deceased was the assailant, that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given, and that at the time of the killing the danger was so urgent and pressing that in order to save his own life the killing was absolutely necessary. This is not the law, and imposes upon one who is entirely faultless, and who exercises his right of self-defense under sections 70 and 71, the greater burden imposed upon one who is not without fault, but who voluntarily enters into a deadly mutual combat, and who therefore must show, in order to justify the killing of his adversary, an absolute necessity to do so to save his own life. It is true that the judge further on, in applying the law to the contentions of the parties, restricted his charge to the law of justifiable homicide as laid down in the Penal Code, §§ 70, 71. But we do not think this corrected the erroneous intermingling of the code sections, but rather tended to add to the confusion of the jury on the subject.

2. It is also insisted that the court erred in the manner in which he charged the three code sections under consideration. They were all charged together and in immediate connection with each other, and without drawing any distinction between the sections as constituting different kinds of justifiable homicide. We think this exception is well taken. There may be cases of homicide when it would be entirely proper to charge all three of these sections to meet different theories presented by the evidence; but whenever it is proper to do so, the court should by specific instructions make clear to the jury the application of each section to the different theories arising from the facts and circumstances of the particular case.

3. In our opinion there was no evidence in this case that required the court to give in charge the law of voluntary manslaughter. If the evidence relied on by the State for a conviction was the truth of the case, the accused was guilty of murder. If the statement of the accused and the evidence in his behalf were the truth of the case, he was not guilty of any offense, but his defense

of justifiable homicide was fully sustained. There is no fact or circumstance in the record upon which a verdict for voluntary manslaughter can be legally predicated, and such verdict should be set aside as contrary to law. *McBeth* v. *State,* 122 *Ga.* 737, 50 S. E. 931; *Berry* v. *State,* 122 *Ga.* 429, 50 S. E. 345; *Tolbirt* v. *State,* 119 *Ga.* 970, 47 S. E. 544.          *Judgment reversed.*