## 5613.  NUNN *v.* THE STATE.

1. While provocation by words, threats, menaces, or contemptuous gestures will not reduce a homicide below the grade of murder when the killing is for the purpose merely of resenting the provocation given, threats and menaces may, under some circumstances, be sufficient to arouse in the mind of the person to whom they are directed a reasonable fear that his life is in danger or that a felony is about to be committed upon him, and thus render justifiable a killing in defense of life or person.  In the present case the law on this subject should have been given in charge to the jury in such manner as to qualify and explain the instruction (given in the language of section 65 of the Penal Code as to the law of manslaughter) that "provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder."

2. While, in a proper case, sections 70, 71, and 73 of the Penal Code may all be given in charge to the jury, they should not be so given as to confuse the minds of the jury as to the separate branches of the law of justifiable homicide dealt with in these sections.

Decided June 22, 1914.

Conviction of manslaughter; from Pierce superior court—Judge Quincey.  February 27, 1914.

*Memory & Summerall,* for plaintiff in error.

*M. D. Dickerson, solicitor-general,* contra.

Roan, J.  Flora Nunn, charged with the murder of her husband, was convicted of voluntary manslaughter.  There was no direct evidence showing how the killing occurred.  The defense relied upon by the accused and embodied in her statement on the trial, was, in substance, that she and her husband had been living in a·state of separation for some time; that on the day he was shot he came to the house where she was living, to get his clothes and his trunk, preparatory to moving; that she told him his trunk was in the barn, and he went to get it while she was packing some of his clothes at the house; that when he went to the barn to get his trunk he said, to her he was unable to get it without tearing off some of the planks of the barn; that she objected to the removal of any of the planks, and he became angry with her, seized an ax, and "made at" her with the ax in his hand,·saying "I will kill you with this ax;" and that, while he was advancing towards her, she retreated into the house, seized her gun, and, for protection, aimed it at him, and as she pulled the trigger and fired he turned and was shot in the back; that she shot under the honest belief that it was necessary to protect her life from what she believed to be a mur-

derous assault that he was then making upon her. In other words, her contentions as embodied in her statement, if believed by the jury, amounted to self-defense, and the killing was justifiable. She was convicted of voluntary manslaughter, and made a motion for a new trial, which was overruled, and she brought the case to this court for review.

1. The fourth ground of the motion for a new trial is that the court erred in charging the jury, in connection with the law of voluntary manslaughter, that "provocation by words, threats, menaces or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder." It is contended that the judge erred in charging this language of the Penal Code (§ 65) without proper qualification. As the defendant's theory of the killing appeared solely from her statement, the court, in the absence of a timely written request to do so, was not bound, as a matter of law, to charge the jury on that theory; but where the judge, without being requested so to charge, does charge upon a theory appearing alone from the statement of the accused, the accused is entitled to have, in the charge as given, the benefit of the theory of the law applicable to the statement. In the case of *Brown* v. *State,* 12 *Ga. App.* 722 (78 S. E. 352), it was said, that "since the decision of the Supreme Court in the case of *Cumming* v. *State,* 99 *Ga.* 662 (27 S. E. 177), it has been uniformly held by that court and by this court that a charge to the jury that 'provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder' (Penal Code, § 65), should not be given without qualification, where there is a theory of the evidence, or of the defendant's statement to the jury, on which the jury might find that the person killing acted in self-defense, on account of a reasonable fear aroused in his mind by menaces, etc., considered in connection with the other facts in the case." In the case at bar, the defense is based on the statement of the accused, and is to the effect that, in killing her husband, she did so under the fears of a reasonable person that he was endeavoring to commit a felony on her person, these fears being aroused by menaces accompanied by the act of drawing an ax and advancing on her. In *Dixon* v. *State,* 12 *Ga. App.* 18 (76 S. E. 794), it was held that "in a prosecution for homicide, it is error to charge the jury that 'provo-

cation by words, threats, menaces, and contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder,' . . without qualification and explanation to the effect that though words, threats, menaces, and contemptuous gestures can in no case mitigate [a homicide from] the offense of murder to voluntary manslaughter, they may . . justify a killing, if the circumstances attending the menaces were sufficient to induce a reasonable fear in the mind of the accused that he was in danger of losing his life or of having a felony committed upon him." In this connection see *Johnson* v. *State,* 105 *Ga.* 665 (31 S. E. 399); *Clay* v. *State,* 124 *Ga.* 795 (53 S. E. 179); *Phillips* v. *State,* 11 *Ga. App.* 264 (75 S. E. 14); *Jones* v. *State,* 7 *Ga. App.* 334 (66 S. E. 961). In the light of these decisions of the Supreme Court and of this court, we hold that the criticism made as to the instruction set out in the fourth ground of the motion for a new trial is well taken, and that the court erred, under the facts of this case as disclosed by the record, in giving in charge the section of the code relating to voluntary manslaughter, without proper explanation or qualification.

2. In the fifth ground of the motion for a new trial it is complained that "the court erred in charging the jury, in connection with the law of self-defense as contained in sections 70 and 71 of the Penal Code, and immediately after having charged the law as contained in said sections, section 73 of the Penal Code, as follows: "If a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary; and it must appear, also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." Section 73 of the Penal Code "applies exclusively to cases of self-defense from danger to life, arising during the progress of a fight wherein both parties had been at fault;" sections 70 and 71 "are applicable when the homicide is committed in good faith to prevent the perpetration of any of the offenses mentioned in section 70, or under the fears of a reasonable man that such an offense will be perpetrated unless the person who is actually, or apparently, about to commit it, be slain. Instructions as to these two separate branches of the law of justifiable homicide should not be so given

as to confuse the one with the other. *Teasley* v. *State,* 104 *Ga.* 738 (30 S. E. 938); *Pugh* v. *State,* 114 *Ga.* 16 (39 S. E. 875); *Jordan* v. *State,* 117 *Ga.* 405 (43 S. E. 747); *Smith* v. *State,* 119 *Ga.* 564 (46 S. E. 846). In giving these sections in immediate sequence, the court first gave the law as contained in section 70, that a person is justifiable in killing "in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony on either." Section 71 was then given, in which it is declared that "A bare fear of any of those offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge." The jury were thus in effect instructed that if a person kill another under the fears of a reasonable person that his life is in danger, or a felony of the character referred to in section 70 is about to be committed upon him, and it is necessary to kill in order to save his own life, or to protect himself from such a felony, the killing would be justifiable; and that an apparent necessity to kill is equivalent to a real necessity; whereas by reading to the jury section 73 of the Penal Code, the court in effect instructed them that even if it appeared to the defendant from all the facts and circumstances that surrounded her at the time, it was necessary to kill her husband in order to save her own life, the killing would not be justifiable, unless it was also shown to be *absolutely* necessary. This section unexplained seems to be in direct conflict with the law as laid down in sections 70 and 71, and when given without any explanation or qualification, in connection with sections 70 and 71, was confusing and more or less perplexing to the minds of a jury of laymen, when they undertook to ascertain from the evidence and the charge of the court whether or not the defendant was justifiable in killing her husband; and this confusion was not necessarily relieved when the judge in the latter part of his charge instructed the jury that the right to kill another in self-defense is not restricted to cases where the accused is put in actual danger of his life or of the commission of a felony upon him by the deceased, but may be exercised when the danger is not actual, if the accused in good faith, under the fears of a reasonable man, acted upon the

belief that the danger was real. It is impossible to tell which portion of the charge the jury applied to the evidence when arriving at its verdict,—the law as laid down by section 73, read to them by the court without comment, or the latter part of the charge, whereby the court seemingly recalled the instructions given on this section. For this reason the latter portion of the court's charge, while it is correct law in the abstract, is in direct conflict with the letter of the law embodied in section 73 of the Penal Code, and it does not operate to modify the law as laid down in that section any more than the law as laid down in that section modifies the latter portion of the charge. It would be well for the trial judges, in giving in charge section 73 of the Penal Code where it is applicable, to instruct the jury, in immediate connection therewith, under what circumstances it is applicable. In this way such confusion can be avoided. See *Powell* v. *State,* 101 *Ga.* 23 (29 S. E. 309, 65 Am. St. R. 277); *Pugh* v. *State,* supra; *Warrick* v. *State,* 125 *Ga.* 141 (53 S. E. 1027); *Pryer* v. *State,* 128 *Ga.* 28 (57 S. E. 93); *Lightsy* v. *State,* 2 *Ga. App.* 442 (58 S. E. 686); *Holland* v. *State,* 3 *Ga. App.* 465 (60 S. E. 205); *McAllister* v. *State,* 7 *Ga. App.* 541 (67 S. E. 221).

There is no merit in any of the other grounds of the motion for a new trial. For the reasons stated above a new trial is granted.

*Judgment reversed.*