### 5753.   BURNSED *v.* THE STATE.

1. The trial judge did not abuse his discretion in refusing to continue the case because of the absence of a witness who was shown to be in the last stages of consumption, and not likely ever to be able to attend a future term of the court.

2. Where two defendants jointly indicted were jointly tried, with the right reserved to each to testify in behalf of the other, and one of the defendants was sworn as a witness in behalf of his codefendant, it was error to give instructions which, while they might have been appropriate if both defendants had only made unsworn statements, tended to exclude the testimony of the one who made no statement but was sworn as a witness for the other.

3. While provocation by words, threats, menaces, or gestures will not reduce below the grade of murder a homicide which is the result merely of resentment or passion thus provoked, threats and menaces may be sufficient to arouse in the mind of the person to whom they are directed a reasonable fear that his life is in danger or that a felony is about to be committed on his person, and thus render justifiable a killing in self-

defense, where the means of inflicting the threatened injury are apparently at hand and there is a manifestation of an intention presently to inflict it. The law on this subject should have been given in charge to the jury in this case in such manner as to qualify and explain the instruction (given in the language of section 65 of the Penal Code as to the law of manslaughter) that "provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder."

DECIDED AUGUST 22, 1914.

Indictment for murder; from Bulloch superior court—Judge Rawlings. April 27, 1914.

*Deal & Renfroe, J. J. E. Anderson, W. F. Slater, Hines & Jordan,* for plaintiff in error.

*R. Lee Moore, solicitor-general,* contra.

RUSSELL, C. J. H. C. Burnsed was jointly indicted with his father, Edmund C. Burnsed, for the murder of Farris Davis. The defendants were jointly tried, and the trial resulted in the acquittal of Edmund C. Burnsed, while H. C. Burnsed was found guilty of voluntary manslaughter. He excepts to the judgment overruling his motion for a new trial.

The evidence would have authorized the conviction of H. C. Burnsed; but since the verdict finding him guilty of voluntary manslaughter is not demanded by the evidence, and the homicide might have been justified in consonance with the principle, well stated by the presiding judge, that the jury would not have been authorized to convict the accused merely for the reason that the defendant "may have used atrocious means to kill his assailant to prevent a felony from being committed upon his person," certain errors, in our opinion, require the grant of another trial. Errors in the admission of evidence and in the charge of the court are generally presumed to be prejudicial to the losing party, and the law in its humanity will not permit the existence of this presumption to be overlooked where the liberty of a citizen, however humble he may be, is involved. A review of the voluminous evidence would be profitless. The inferences authorized by the circumstances surrounding the body of the deceased at the time it was found, together with the testimony of the mother of the deceased, and the testimony as to the location of the wound, might have justified a verdict finding the plaintiff in error guilty of murder; and, as previously stated, there is evidence authorizing the verdict of voluntary manslaughter; yet there is testimony in the record which

would have authorized the acquittal of the plaintiff in error. In this view of the case it can not be said that the errors to which we shall now advert may not have been causa causans which induced the verdict actually rendered; and therefore, pretermitting any discussion of the general grounds of the motion for a new trial, we shall merely rule upon the additional grounds approved by the trial judge.

1. There was no error in overruling the motion for a continuance. No exception is taken to that ruling except in so far as it relates to the absent witness, Nora Davis. From what subsequently transpired in the trial, it does not appear that the testimony expected from this witness would have been of any considerable materiality; it certainly can not be said that, upon the counter-showing which was submitted by the State, the trial judge abused his discretion. In support of the counter-showing there was testimony that this witness lived 25 miles from the court-house, and that she was in bed with tuberculosis and was expected to die at any time, and, in the opinion of one witness, she would never be able to come to court. It is true the witness who stated this opinion testified that he saw her about a week or ten days before, in a buggy, a quarter of a mile from her home, but he testified also that, in his opinion, she was unable to take a 25-mile ride, in either a buggy or an automobile. Another witness expressed the opinion that she would not live until the next term of the court, that she seemed to have tuberculosis, and was not able to travel. This testimony for the State being uncontradicted, the court could very well hold that the defendant could not reasonably expect the presence of the witness at the next term of the court. And the only fact which the defendant expected to prove by the absent witness was that the deceased told her on one occasion that he would spill the last drop of blood in his veins in defense of Nancy Futch; on whose account, as insisted by the defendants, Farris Davis, the deceased, provoked the encounter in which he lost his life.

2. Exception is taken to the following instruction upon the defendant's statement at the trial: "The defendants have made statements in your hearing. These statements are not made under oath, and there is no penalty attached to the making of a false statement. You have the right, however, to give them just such weight and credit as you think they are entitled to. You have the right to

act upon them and acquit the defendant, even in preference to the sworn testimony, if you see fit to do so, or you may set the statements aside and look to the sworn testimony, if you deem proper and right. In your search for the truth, give the statements of the defendants such weight and such credit as you may deem that they should receive." It appears from the record that, while Edmund C. Burnsed, the codefendant of the plaintiff in error, made a statement in his own behalf toward the conclusion of the testimony, he was introduced at an earlier stage in the proceedings and sworn as a witness, and as such was examined, cross-examined, re-examined, and again cross-examined. As a sworn witness he testified in behalf of his codefendant (who admitted the killing) ; and as a defendant he made a statement in his own behalf, denying that he in any way participated in the homicide, and insisting, on the contrary, that he endeavored to be a peacemaker; and the omission of the court to refer, in this instruction or in connection with it, to the competency of each of the defendants to testify generally as a witness, or in behalf of his codefendant, tended to exclude from the consideration of the jury the testimony delivered by Edmund C. Burnsed in behalf of the plaintiff in error. Even if it did not have this effect, it was liable to confuse the jury and leave them in doubt as to what weight should be given to this testimony of one of the parties upon trial for his life. The facts upon this point are not identical with those in *Staten* v. *State*, 140 *Ga.* 110 (78 S. E. 766), but the ruling must be controlled by the principle therein announced. As was said in the second headnote in that case, as to the testimony of joint defendants, the "testimony should be treated as evidence, under appropriate instructions from the court." It may be said that the court was not required to single out the testimony of Edmund C. Burnsed, and that the general instructions upon the testimony as a whole included appropriate reference to the testimony of that defendant, and for this reason his instruction as to the defendants' statements was appropriate and correct. However, the circumstances under which one who is himself accused as a joint perpetrator of a crime takes the stand as a witness are so exceptional that we deem it to be better practice that the attention of the jury· be directed to the exercise of this right upon the part of the accused, and that they be instructed that this testimony is to be given the same consideration as that of other witnesses.

3. We think the learned trial judge erred in overruling the ground of the motion for a new trial in which complaint is made that the court charged the jury that "provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder" (Penal Code, § 65), without qualification and without a further instruction to the effect that words, threats, and menaces could be considered by them in determining whether the defendant was justified in killing the deceased by reason of fears reasonably engendered by the language and conduct of the deceased. Upon a review of the language of the charge of the court, we are of the opinion that the judge intended to give an instruction which would have been the equivalent of the instruction which it is contended should have been given; for in one part of the charge he stated that he would shortly give a definition of justifiable homicide and reasonable fears; but he thereafter omitted to give the specific instruction which was necessary to qualify the charge already given in regard to provocation by words, threats, menaces, or contemptuous gestures. A reading of the entire charge shows that nowhere were the jury told that if they found that the deceased used words, threats, and menaces towards the defendant, such as, under the circumstances, to arouse the fears of a reasonable man that a felony was about to be committed upon him, or that his life was in danger, and further found that he acted in self-defense, under such fear, the homicide would be justifiable; although mere heat of passion, engendered by either words, threats, menaces, or contemptuous gestures, would not mitigate a homicide and reduce it below the grade of murder. In view of the instructions actually given, and in view of the fact that the defense of the accused rested upon the proposition that he acted under the fears of a reasonable man, the court's omission so to instruct the jury was error requiring a new trial. *Cumming* v. *State,* 99 *Ga.* 662 (27 S. E. 177); *Holland* v. *State,* 3 *Ga. App.* 467 (3); *Rossi* v. *State,* 7 *Ga. App.* 732 (68 S. E. 56); *Dunn* v. *State,* 13 *Ga. App.* 682 (79 S. E. 764); *Nunn* v. *State,* ante, 695 (82 S. E. 56).        *Judgment reversed. Roan, J., absent.*