## 27036. GAMBLE v. THE STATE.

638

, DECIDED NOVEMBER 4, 1938.

*Frank A. Bowers, George D. Stewart,* for plaintiff in error.
*John A. Boykin, solicitor-general, J. W. LeCraw, E. E. Andrews,* contra.

MACINTYRE, J.   Gamble was indicted for murder, and was convicted of voluntary manslaughter.   He moved for a new trial and his motion was overruled and he excepted on the ground that the evidence did not authorize a verdict of voluntary manslaughter.

The evidence for the State made out a case of murder, and the evidence for the defendant, if believed in its entirety, would have authorized the jury to acquit the defendant.   The jury could believe that portion of the defendant's statement which said hot words passed between the defendant and the deceased, when the deceased used some insulting language in the presence of two white women in the restaurant, whereupon the defendant warned him about such language and the deceased applied to the defendant a violent and most insulting epithet.   The defendant told the deceased Negro "Don't talk to me that way," and the defendant's companion, Johnson, said to the defendant "Let's go, let's get out of here."   The defendant, in his statement to the jury, said that after this occurred the following happened:   "I said,' ' I will see the manager about the way that Negro was talking,' walked right on around, and Vic [the manager] was standing right at the end of the counter there. I said, 'Are you the manager?'   He said, 'Yes.'   I said, 'That Negro is using mighty bad words back there, insulting white people and everything else.'   He [the deceased] said, 'You are a lying, white-faced s. o. b.   I haven't insulted anybody.   What I said, it

went.' I said, 'Don't talk to me that way.' He said, 'I mean it; if you don't like it, what are you going to do about it?' He picked up a butcher knife, walked towards me. I said, 'Don't come another step towards me.' ` Vic was saying, 'Stop him, stop him.' I was telling him to stop all the time. The Negro kept coming towards me with a butcher knife, looked to be about that long. Then I told him to stop one more time. I said, 'You take another step—' I said, 'don't you take another step,' and he did not open his mouth, he kept on coming towards me. I began to shoot. The Negro began to stoop over, fell over sideways, fell there, and I walked out; and I had to kill the Negro in self-defense, the only way in the world, I believe, I could save my life, but I am sorry that I did it. That's all."

It is " 'well settled that it is the prerogative of the jury to accept the defendant's statement as a whole, or to reject it as a whole, to believe it in part, or disbelieve it in part. In the exercise of this discretion they are unlimited. *Brown* v. *State*, 10 *Ga. App.* 50, 54, 55 (72 S. E. 537).' *May* v. *State*, 24 *Ga. App.* 379 (11), 382 (100 S. E. 797)." *French* v. *State*, 43 *Ga. App.* 97 (5) (157 S. E. 902). The jury could disbelieve that portion of the defendant's statement which said: "I had to kill the Negro in self-defense, the only way in the world, I believe, I could save my life, but I am sorry that I did it." If the jury did so, they would have been authorized to find, from the preceding part of the defendant's statement and the other evidence, that this amounted to an assault or other equivalent circumstances which aroused a passion in the mind of the defendant and as a result of said passion so engendered, which passion arose from a just cause, that the defendant immediately shot and killed the deceased without cooling time. *Dunwoody* v. *State*, 23 *Ga. App.* 93 (97 ·S. E. 561); *Dunwoody* v. *State*, 149 *Ga.* 617 (101 S. E. 581); *Plymel* v. *State*, 164 *Ga.* 677 (139 S. E. 349); *Booker* v. *State*, 153 *Ga.* 117, 119 (111 S. E. 418); *Pollard* v. *State*, 124 *Ga.* 100 (52 S. E. 149); *Smith* v. *State*, 118 *Ga.* 61, 62 (44 S. E. 817). It will be noticed from the statement of the defendant that he did not declare that the deceased actually made an effort to use the butcher knife upon the defendant's person, nor did the deceased make a threat to kill simultaneously with the picking up of the butcher knife and the walking toward the defendant. There was no evidence that the butcher knife was a dangerous weapon, nor did

the evidence or the defendant's statement raise the question that the defendant used the butcher knife in a manner calculated to produce death, it being only said that the deceased "picked up a butcher knife and walked toward me [defendant]." See *Amerson* v. *State*, 26 *Ga. App.* 68 (105 S. E. 378) ; *Browning* v. *State*, 31 *Ga. App.* 150 (120 S. E. 649). It was for the jury to determine whether, under the circumstances, the killing was murder, voluntary manslaughter, or justifiable homicide. In the instant case the jury could, under the defendant's statement, if they saw fit, have found that the deceased's conduct was such as would produce the same state of mind on the part of the defendant as would an unjustifiable assault or attempt to commit a serious personal injury upon him. *Cyrus* v. *State*, 102 *Ga.* 616, 618 (29 S. E. 917) ; *Johnson* v. *State*, 12 *Ga. App.* 493 (77 S. E. 587) ; *Barrett* v. *State*, 14 *Ga. App.* 807, 808 (82 S. E. 371). The jury was authorized to find the defendant guilty of voluntary manslaughter.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*