1. The court did not err in charging the principle of voluntary manslaughter as applied to homicide under a passion supposed to be irresistible, as contained in the Code, § 26-1007, nor in charging mutual combat. The evidence certainly raised a doubt as to whether or not these principles were applicable, and in such case it is the duty of the court to give them in charge to the jury.
2. Where, as here, in a trial for murder a verdict for voluntary manslaughter is returned, such verdict is tantamount to an acquittal of the charge of murder. The doctrine of reasonable fears applies to justification as the antithesis of murder. If the charge as applied to justification is erroneous it is harmless when applied to voluntary manslaughter.
3. The assignments of error in special ground 5 of the motion for new trial, under the whole record, are without merit as applied to a verdict for voluntary manslaughter.
4. For the reasons given in the opinion, the assignments of error in special ground 8 of the motion do not require a reversal.
 DECIDED JULY 22, 1944. ADHERED TO ON REHEARING JULY 28, 1944.
The defendant was convicted of voluntary manslaughter. His motion for a new trial was overruled, and to this judgment he excepted. The record reveals that previous to the homicide the relation of landlord and cropper existed between the defendant and the deceased. From this relationship arose differences which grew into a state of enmity between the two. This state of bad feeling seems to have increased in intensity until the day of the homicide. On the day of the homicide the defendant and the deceased met several times in Douglas, Georgia, neither speaking to the other. A witness who was present at the time of the homicide testified: ". . and the old gentleman [meaning the defendant] came out from the Sinclair filling-station door, and goes across and slaps the little man [meaning the deceased] down, . . and the little man grabbed his clothes and staggered back and fell with his head even with the shed in front of the filling station . . . I didn't see the little man doing anything when he slapped him; he was just *Page 540 
standing there near the tanks, with one hand in his pocket and the other one slung down beside him. It was his left hand in the pocket. . . After he was slapped, he grabbed himself about here . . with the right hand, and he was staggering back and fell." Another eyewitness testified: "I was at the filling station . . and I heard somebody say, `now go on and leave him alone,' and I looked around and Mr. Cribb was bringing his hand down from this man what got killed, Mr. Bullard; and he just turned and went walking on off, and Mr. Cribb walked on down the street. . . The man who was cut walked about as far as from here to the end of them benches there and fell right on his face. When I saw the other man pulling the lick back, the man that got cut just whirled around and put his hand up here (indicating) and went walking on and says, `Yes, I will go.' His other hand was down by his side; he did not have anything in his hand; I would say I was about eight feet from them. I could see the hands of either of them. I saw the knife in Mr. Cribb's hand; after he pulled the knife out, he put it in his pocket. I didn't see him when he hit the man at all. When I looked he was pulling the knife back, bringing his hand down, and he put the knife in his pocket and walked on down the street. . . He [deceased] didn't have anything in his hand, though, when he turned around and walked off. He had pulled his hand out of his pocket, and he had already said, `I will go on.' I don't know whether or not somebody had told him to go on and let him alone. As to why he said, then, `I will go on,' well, it must have been Mr. Cribb; when I heard one say, `Now, go on and leave me alone,' he says, `Yes, I will go.' It is my opinion that Mr. Cribb said that, because that is the answer he got." Another witness testified: "I heard one of them tell him to `Go on, now,' and I turned around and looked, and he was drawing the knife back from the other man — I forgot his name. I know Mr. Cribb. I did not know the other man prior to that. The other man weighed between 140 and 150 pounds. Mr. Cribb is a larger man than that. I heard somebody say: `Now, go along and let me alone.' I looked around then, and he was drawing his knife back. He looked around, and he says, `Go on, now,' and I looked around, and he was pulling the knife back, and he took it and snapped it. The other man says, `All right, I will go on and leave you alone,' and he turned and *Page 541 
walked off about, maybe, five or six yards, and fell." The same witness testified further: "I heard Mr. Cribb say, `Go on, now, and let me alone.' When Mr. Cribb said that, I turned to look. I hadn't been looking in that direction — I was interested in the truck. And then Mr. Bullard was turning around and started to stagger, and walked off and fell." The deceased was stabbed one time through the heart.
The defendant in his statement, after reciting the differences between him and the deceased, and after having stated that he had come face to face with the deceased on three occasions just shortly before the mortal blow, and that the deceased looked like he wanted to raise trouble, he went away from the deceased, and was walking away from the deceased on the sidewalk when, "he [meaning deceased] was cutting me off, and he got up right close to me. He says, `I spoke to you three times down there this evening and you wouldn't speak. We are going to settle our differences right now. I have got my knife, pull yours.' Well, he could have been drunk. He was fumbling. He grabbed for his knife, and I happened to get mine first. His fumbling was all that kept him from hitting me first." The other portions of the defendant's statement, in the main, tended to show justification in self-defense.
The motion for new trial was amended, assigning error on several special grounds. Special grounds 6, 7, 9, and 10 are expressly abandoned in the brief for the plaintiff in error, whom we will hereinafter call the defendant. This leaves the general grounds, and special grounds 4, 5, and 8.
1. The general grounds are to the effect that the verdict should be set aside because the evidence does not warrant a verdict for voluntary manslaughter. While we have not attempted to set out all the evidence, in our opinion we have set out a sufficiency to show that the evidence sustains the verdict for manslaughter, either under the doctrine of irresistible passion or mutual combat. It is certainly sufficient to raise a doubt as to the principle of manslaughter under either theory. In such event it was the duty of the trial judge to submit the doctrine of manslaughter and let the jury determine the issue. Booker v.State, 153 Ga. 117 (111 S.E. 418); Drane v. State,147 Ga. 212 *Page 542 
(93 S.E. 217); Thomas v. State, 51 Ga. App. 455 (2) (180 S.E. 760); Gamble v. State, 58 Ga. App. 637 (199 S.E. 662). Therefore, unless there be some reversible error under the special grounds argued, the judgment of the court overruling the motion for a new trial should be sustained. This brings us to the special grounds.
2. Special ground 4 complains because the court charged: "Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder." Error is assigned because (a) this excerpt is not a correct exposition of the law, under the facts of this case, it being contended that the defendant killed in self-defense, under the theory of reasonable fears; and (b) because the excerpt without some immediate limitation and explanation in the charge tended to confuse the jury to the reversible injury of the defendant. It has been repeatedly held by both the Supreme Court and this court that the charge complained of is not error as applied to voluntary manslaughter.Booker v. State, 183 Ga. 822 (4) (190 S.E. 356). The doctrine of reasonable fears applies only to the principle of justification. Such doctrine does not apply to the offense of voluntary manslaughter. Where the defendant was tried for murder and convicted of manslaughter, the verdict of manslaughter is tantamount to an acquittal of the charge of murder. Therefore the charge complained of, if erroneous, as applied to the offense of murder, becomes harmless as applied to manslaughter. Goldsmith
v. State, 54 Ga. App. 268, 272 (187 S.E. 694); Gresham v.State, 70 Ga. App. 80 (27 S.E. 463); Hilliard v. State,71 Ga. App. 528 (31 S.E.2d 246).
3. Special ground 5 complains of the following excerpt from the charge: "Mutual combat arises where there is a mutual intention to fight — each to fight the other. If a person should kill another in his defense while engaged in mutual combat, to justify the killing it must appear that the danger was so urgent and pressing at the time of the killing that in order to save his own life the killing of the other was absolutely necessary; and also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given. If one should kill another in his defense while engaged in mutual combat, and it should not appear that the danger was so urgent and pressing at the time that in order to *Page 543 
save his own life the killing of the other was absolutely necessary, and also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given, the killing would not be justifiable, and the jury would be authorized to convict of voluntary manslaughter." Error is assigned on this charge on the grounds: (a) that mutual combat is not involved under the evidence or the defendant's statement; (b) that it led the jury to believe that before the defendant would be justified in the killing an actual necessity existed to take the life of the deceased to save the defendant's own life; (c) that it had the effect of excluding from the consideration of the jury the defense of the defendant to the effect that he killed the deceased under the fears of a reasonable man — that the life of the defendant was in danger, and that a felony was about to be committed upon him; (d) that the court failed to give in charge in connection therewith the law that this principle applied only in the event the jury should first determine that the defendant and the accused were engaged in mutual combat; and (e) because the charge entirely ignored the defendant's right to kill under the fears of a reasonable man.
As we have heretofore stated, voluntary manslaughter under the principle of mutual combat was involved under the evidence and the defendant's statement, and therefore the assignment of error in ground (a) is without merit. Those designated as (b), (c), (d), and (e) involve the principle of justification, and as we have hereinbefore stated, under the facts of this case and the law applicable thereto, if erroneous as contended by the defendant, which we do not decide, they are harmless as applied to the verdict for voluntary manslaughter, which in effect was an acquittal of the charge of murder. There are two classes of homicide involving voluntary manslaughter known to our law, one under the Code, § 26-1007, which is generally recognized as the taking of human life under a "sudden, violent impulse of passion supposed to be irresistible." In this class of cases the wrongful intent and purpose of the slayer and the slain are not mutual. The slain is not equally wrong with the slayer. The other class of cases involving voluntary manslaughter is founded on the doctrine of mutual intention to fight, that is, the mutual intention on the part of each to take human life, generally with deadly weapons. In the latter class of cases, *Page 544 
both parties are equally at fault. In both classes of cases hot blood is supposed to motivate the slayer. And in neither of them does the law exonerate or justify him. So far as mutual combat is concerned, in the case of Powell v. State, 101 Ga. 9, 25
(29 S.E. 309, 65 Am. St. R. 277), the Supreme Court said: "Having willingly engaged in the affray, he is in equal fault with the other, and under such circumstances it is not justifiable for him to slay his adversary without more." This is but to say that killing under such circumstances is voluntary manslaughter. A very able discussion of this question will be found in the Powell case. But even though one should be equally at fault in becoming engaged in mutual combat, still he may be justified in slaying his adversary provided he repents and disrobes himself of his mutual wrong. After he has done so the principles of § 26-1014 provide the standard for his conduct in order to be justified in taking human life. This section reads: "If a person shall kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary; and it must appear, also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." This Code section applies to justification only in cases of mutual combat as applied to murder, but has nothing to do with mutual combat as applied to voluntary manslaughter. What the courts have endeavored to do is to keep the principles and requirements of justification on the part of the slayer in this class of cases, involving mutual combat under this section, from being confused with the principles of justification under §§ 26-1011, 26-1012 and 26-1013. To this end the Supreme Court has repeatedly held that, in charging the jury with reference to justification under the doctrine of mutual combat, the jury should always be instructed that this principle of self-defense or justification should have no application unless the jury should first believe that the parties were engaged in mutual combat, that is, a mutual intention to fight to the death, generally with deadly weapons.Powell v. State, supra; Teasley v. State, 104 Ga. 738
(30 S.E. 938); Pugh v. State, 114 Ga. 16 (39 S.E. 875);Franklin v. State, 146 Ga. 40 (90 S.E. 480); Boatwright
v. State, 162 Ga. 378 (134 S.E. 91). In all of these *Page 545 
cases except Pugh v. State, verdicts for murder were returned. There the reversal was based solely on the ground that the facts did not involve voluntary manslaughter, although the principle here under consideration was discussed. In Nunn v.State, 14 Ga. App. 695 (82 S.E. 56), this principle was also discussed, but as best we can gather the reversal of the verdict of manslaughter was based on the ground that the evidence did not involve voluntary manslaughter. The facts of the Nunn case distinguish it from the case at bar.
In view of the entire charge, and in view of the evidence in this case, and in view of the verdict for voluntary manslaughter only, which was authorized by the evidence, we find no reversible error for any of the reasons assigned. If the verdict had been for murder, a different conclusion might be required.
4. Special ground 8 complains because the court gave in charge the Code, § 26-1011, as related to justifiable homicide in self-defense, and § 26-1012, as related to justifiable homicide under the fears of a reasonable man, and § 26-1014, as related to mutual intention to fight (the last-mentioned section being applicable only in cases of mutual combat), in such manner as to be confusing to the jury and prejudicial to the defendant. the specific assignments under this ground are: (a) because the court failed to explain and differentiate to the jury when each separate Code section was applicable; (b) because there was no mutual combat under the evidence or the defendant's statement; (c) because there was no explanation given by the court that § 26-1014 was applicable only in cases of mutual combat; (d) because the principles of justifiable homicide as related to § 26-1011 and 26-1012 on the one hand, and the principle of law as to mutual combat contained in § 26-1014 on the other hand, were not differentiated by the court, but to the contrary were given in such manner as to be confusing. In view of what we have said above and the evidence and the defendant's statement, under the whole charge, these assignments of error do not require a reversal.
The court did not err in overruling the motion for new trial for any of the reasons assigned.
Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur. *Page 546 
[EDITORS' NOTE: THIS PAGE IS BLANK.] *Page 547